FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 24

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 43025-8-II |
| REBECCA A. LARSEN, | |
| Respondent, | |
| v. | |
| JEREMIAH J. LARSEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — In this appeal of several terms of the dissolution of Jeremiah Larsen's marriage, Jeremiah makes thirteen assignments of error challenging (1) Rebecca Bamberg's (formerly Rebecca Larsen)[1] service of her proposed orders, (2) the sufficiency of the evidence for an anti-harassment order against him, (3) various provisions of the parenting plan, and (4) various provisions of the child support order. We agree that the trial court abused its discretion when it failed to consider a downward deviation from the statutory child support schedule, when it failed to properly consider Social Security disability payments in setting child support, and when it required Jeremiah to pay for dispute resolution. We hold that the trial court did not err when it decided to not include the marital home's negative equity in its calculation of Jeremiah's transfer payment, when it decided to require Jeremiah to purchase a full wardrobe for AL and EL, and when it decided not to consider Rebecca's potential uncertain additional income in

---

[1] We refer to Jeremiah Larsen and Rebecca Bamberg by their first names for purposes of clarity and intend no disrespect. The children are referred to by their initials to protect their privacy.

calculating the award for child support. We decline to address the remainder of Jeremiah's arguments because he did not preserve them for appeal, he provided an incomplete appellate record, or he raised them for the first time in his reply brief. Accordingly, we vacate the parenting plan's dispute resolution provision and the child support award, and we remand for the trial court to determine whether (1) Jeremiah should receive a whole family downward deviation from the statutory child support schedule to account for his two children from another marriage, (2) the child support order should include a larger offset to account for Jeremiah's additional Social Security money, and (3) Jeremiah's inability to pay for dispute resolution justifies removing his requirement to do so.

## FACTS[2]

Jeremiah and Rebecca married on September 21, 2002, and divorced on December 22, 2011. Jeremiah and Rebecca have two minor children together, AL and EL. In addition, Jeremiah has two minor children from a previous marriage (hereafter "Clark County children.") In prior separate proceedings, Jeremiah was granted residential time and was also ordered to pay child support for his Clark County children.

Jeremiah suffers from multiple sclerosis (M.S.). His sole sources of income are a pension and disability income from Social Security. Social Security made payments to each of Jeremiah's children, and also paid Rebecca direct benefits during their marriage because she qualified as a spouse who cared for Jeremiah's minor children. Rebecca was a newly licensed

---

[2] The record on appeal consists of an incomplete verbatim report of proceedings (VRP), and three final orders. The incomplete VRP omits Rebecca's testimony. While many clerk's papers were filed, the appellate record contains no trial exhibits. Additionally, the parties assert many unsupported facts in their briefs, which we do not consider.

massage therapist, who had $12,339 in student loans. Rebecca also homeschooled EL and AL. Jeremiah and Rebecca owned a house together. As dissolution moved forward, Jeremiah agreed to take ownership of the house and assume its mortgage.

Before the dissolution trial, the trial court denied Rebecca's request for a temporary anti-harassment protection order. Also before trial, the trial court issued a temporary parenting plan and other temporary orders. The temporary parenting plan excluded Rebecca's proposed alternative dispute resolution provision requiring each party to pay a portion of its costs. The trial court stated, "I wish we had that available to us . . . [but] I can't require anybody to do it if they don't have the funds, or don't feel they have the funds . . . ." Verbatim Report of Proceedings (VRP) at 49.

At trial, both parties proceeded pro se. Rebecca proposed orders, at least two of which the trial court adopted. In her appellate brief, Rebecca claims that she emailed a copy of these orders to Jeremiah a week in advance of trial. Jeremiah's appellate brief asserts that he never received those emails and thus never saw Rebecca's proposed orders until the first day of trial.[3]

After the conclusion of testimony, the trial court reviewed Rebecca's proposed orders and examined Rebecca's calculations. The trial court asked her how she arrived at $161 in maintenance. Rebecca explained that it represented the amount that Jeremiah's Social Security paid her as a spouse who cared for Jeremiah's minor children.

At this time, Jeremiah attempted to explain that because the parties' marriage had not lasted for 10 or more years, Social Security would redirect the $161 to Jeremiah's four children

---

[3] The record on appeal contains no information about this factual dispute.

after dissolution.[4] Jeremiah told the trial court that this would increase the monthly amount that each child receives from Social Security by $40.25, resulting in a total of $201.25 per child. Accordingly, Jeremiah wanted the trial court to increase his child support offset for his Social Security disability's payments by $40 per child (to $201 per child). The trial court did not appear to acknowledge Jeremiah's request and stated, "I was trying to figure out where [Rebecca's maintenance number] came from, so that explains where." VRP at 179.

The trial court also explored Rebecca's calculation for a $15,535 equalization transfer payment in her proposed orders. Rebecca explained that this number was based on the theory that the entirety of both parties' debt constituted community debt. Rebecca's proposal included her student loans as a community debt.

The trial court granted Rebecca's request for an anti-harassment order against Jeremiah stating, "I've seen enough of the emails," without explaining which emails the trial court was referring to. VRP at 196. The anti-harassment order prevented Jeremiah from entering Rebecca's workplace and/or disturbing the peace, but did not prevent Jeremiah from going to Rebecca's home or require him to keep a set distance from her.

The trial court characterized Rebecca's student loan as a community debt because she had previously served as homemaker, and needed to work outside the home to support the marital community after Jeremiah's M.S. rendered him incapable of working. The trial court granted Rebecca's full request for $15,535 as an equalization transfer payment. The trial court

---

[4] See 42 U.S.C. § 416(d)(1) (to qualify as a "divorced wife" entitled to Social Security benefits of a recipient, a spouse must have been married to the recipient "for a period of 10 years immediately before the date the divorce became effective.").

set Jeremiah's interest on the $15,535 transfer payment at 5 per cent per year, and ordered him to make minimum payments to Rebecca of $250 per month on this debt.

Rather than grant Jeremiah's request to reduce the equalization transfer payment by half of the marital home's negative equity, the trial court gave Jeremiah an additional year to remove Rebecca from the mortgage by refinancing or selling the home.[5] The trial court explained that the economy might turn around and reduce the home's negative equity. The trial court then ordered Rebecca to quit claim the marital home to Jeremiah.

The trial court ordered Jeremiah to buy a full wardrobe for his two children with Rebecca. On the child support order, the trial court granted Jeremiah a $25 downward deviation to fund this wardrobe. The trial court also granted Jeremiah an offset, reducing his child support payments by $161 per child per month to account for Social Security payments to each child.

During the trial court's final oral ruling, Jeremiah again asked the trial court to increase the $161 child support offset to $201 to reflect the increased amount that Social Security would pay his children after dissolution. The trial court refused to consider this issue, stating, "No, I'm not—the child support is based on what your income is, and it's going to stay as what is here." VRP at 201-02.

Also during the final oral ruling, Jeremiah asked the trial court to take into account the "whole family formula," which would reduce his child support based on his support obligations

---

[5] It is impossible to tell from the record if the trial court placed a value on the house or assigned it a specific amount of negative equity.

for his Clark County children. The trial court refused to consider this stating, "[Y]ou didn't present anything to me, and I'm not gonna stop now."[6] VRP at 204.

Because of Rebecca's potential for increased income, the child support order allowed for modification within one year and required each party to exchange tax returns on May 1, 2012.

The parenting plan included Rebecca's proposed dispute resolution provision that split the costs equally between the parties. Jeremiah never objected to this provision during the trial. Jeremiah appeals.

ANALYSIS

I. THE EQUALIZATION TRANSFER PAYMENT

Jeremiah argues that the trial court abused its discretion by not adjusting the equalization transfer payment downward to account for the negative equity of the marital home. We disagree.

We review a trial court's property award in dissolution proceedings for an abuse of discretion. *In the Matter of Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012), *review denied*, 176 Wn.2d 1009 (2012). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Bowen*, 168 Wn. App. at 586-87.

---

[6] It appears from the record that the trial court was hurrying to get through its final ruling before the courthouse closed for the evening.

No. 43025-8-II

In calculating the equalization payment, the trial court considered the negative equity of the marital home, but did not consider it a debt or divide it between Jeremiah and Rebecca.[7] Rather than consider the negative equity a debt, the trial court instead reasoned that the economy might improve within two years, and thus gave Jeremiah a second year to pay off the mortgage or sell the house. Because this decision is not outside the range of acceptable choices given the facts in this case, the trial court's equalization transfer payment amount was not an abuse of discretion. *See Bowen*, 168 Wn. App. at 586-87.[8]

## II. THE PARENTING PLAN

Jeremiah next argues that the trial court abused its discretion by (1) ordering him to buy an entire wardrobe for his children, and (2) imposing a dispute resolution provision without considering whether he could afford it. We disagree that the trial court erred by ordering Jeremiah to buy wardrobes for his children, however, we vacate the provision requiring Jeremiah to pay for dispute resolution, and remand to the trial court to determine whether Jeremiah can afford such a dispute resolution provision.

A.    *The Full Wardrobe Requirement*

Jeremiah argues that the trial court erred in requiring him to buy an entire wardrobe for the children, given his limited residential time. We disagree.

---

[7] Jeremiah cites no authority suggesting that the trial court needed to consider negative equity as a community debt that is required to be apportioned between the parties.

[8] As a separate assignment of error, Jeremiah argues that the child support worksheets should have reported the value of his house at $95,000 instead of $126,000. However, Jeremiah provides no reason why changing the home's value on the *child support worksheets* would have changed the child support order.

7

We review parenting plan provisions for an abuse of discretion. *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion only when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Bowen*, 168 Wn. App. at 586-87.

The trial court granted Jeremiah a $25 deviation in his child support to pay for the clothes the trial court ordered him to buy for the children. Given that the trial court attempted to relieve the burden of the clothing requirement upon Jeremiah by granting him a deviation, we cannot say on the record before us that the trial court abused its discretion in imposing this requirement. *See Bowen*, 168 Wn. App. at 586-87.

B.  *The Dispute Resolution Provision*

Jeremiah argues that the parenting plan's dispute resolution provision is invalid because he is unable to afford dispute resolution. Rebecca argues that Jeremiah failed to preserve the issue at trial. Rebecca also argues that even had Jeremiah preserved the issue, the trial court did not abuse its discretion because it is reasonable to require a dispute resolution provision to avoid litigation costs. We exercise our discretion under RAP 2.5(a) to review this non-preserved issue, and hold that the trial court abused its discretion by failing to apply the law.

1.  *Failure To Preserve*

RAP 2.5(a) allows, but does not require, us to refuse to review certain claims that an appellant failed to raise at the trial court level. Courts may consider a law that is relevant, even if the parties failed to bring it to the attention of the trial court. *See Ellis v. City of Seattle*, 142 Wn.2d 450, 459-60 n.3, 13 P.3d 1065 (2000). We consider this issue, despite Jeremiah's failure to raise it below.

Jeremiah did not suspect that Rebecca had reinserted the dispute resolution provision into her proposed final parenting plan after the pretrial judge explicitly struck it from the parties' temporary parenting plan due to affordability concerns. Combining this unrecognized reinsertion with the speed at which the trial court entered its ruling, the possibility that Jeremiah had not seen the proposed final orders before the day of trial, and the trial court's error on this issue, we exercise our discretion under RAP 2.5(a) to reach the issue.

2. *Abuse of Discretion*

Jeremiah argues that the trial court erred in inserting the dispute resolution provision in the final parenting plan without considering whether Jeremiah could afford it. We agree.

We review parenting plan provisions for an abuse of discretion. *Halls*, 126 Wn. App. at 606. A trial court abuses its discretion when it fails to apply the applicable law. *In re Parentage of M.F.*, 141 Wn. App. 558, 572, 170 P.3d 601 (2007); *In re Parentage of Jannot*, 110 Wn. App. 16, 22, 37 P.3d 1265 (2002).

RCW 26.09.187(1) states that the trial court "shall not order a dispute resolution . . . when it finds that either parent is unable to afford the cost of the proposed dispute resolution process." In this case, the trial court included the dispute resolution provision in its final order without considering whether or not Jeremiah could afford the provision, and despite a prior pretrial court explicitly removing the provision from the temporary parenting plan due to affordability concerns. Also, Jeremiah asserted repeatedly that he was desperately struggling to make ends meet. The trial court's complete failure to consider whether Jeremiah could afford a dispute resolution process is an abuse of discretion because it failed to properly apply RCW

26.08.187(1). Thus we vacate this provision and remand to the trial court to determine whether Jeremiah can afford the dispute resolution provision.

### III. CHILD SUPPORT ORDER

Jeremiah argues that the trial court abused its discretion by (1) refusing to consider Rebecca's potential but uncertain additional income when it set Jeremiah's child support payment, (2) refusing to consider Jeremiah's request for a deviation to account for his other two children, and (3) failing to consider increasing Jeremiah's offset for the increased amount Social Security will potentially pay his children after his dissolution from Rebecca. We agree in part and disagree in part.

We do not overturn child support determinations absent an abuse of discretion. *Bowen*, 168 Wn. App. at 586-87. There is a heavy presumption in favor of upholding the trial court's judgment in a dissolution action. *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). A trial court abuses its discretion only when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Bowen*, 168 Wn. App. at 586-87. A trial court also abuses its discretion when it fails to apply the applicable law. *M.F.*, 141 Wn. App. at 572; *Jannot*, 110 Wn. App. at 22.

We hold that the trial court did not abuse its discretion when it (1) considered Rebecca's potential additional income, but did abuse its discretion when it (2) refused to consider Jeremiah's request for a whole family downward deviation and (3) failed to increase Jeremiah's offset to account for changes in the Social Security payments.

A. *Rebecca's Additional Income*

Jeremiah argues that the trial court erred in failing to consider Rebecca's potential, but uncertain, additional private practice income when setting Jeremiah's child support payment. Jeremiah claims that pages he printed from her Facebook website and submitted to the trial court proved that Rebecca has income higher than she reported. Rebecca argues that she provided her "pay stubs" to the court.[9] Br. of Resp't at 11. Rebecca also argues that the trial court did not abuse its discretion because it took her additional income into consideration by ordering the parties to exchange their tax information and allowing the child support order to be modified within one year. We disagree with Jeremiah.

The trial court properly considered and responded to the possibility that Rebecca may have recently received more income than in the child support worksheets because of her new career. To accommodate this, the trial court ordered the parties to exchange 2011 tax information on May 1, 2012. The trial court also allowed child support modification in one year, instead of the two years provided in RCW 26.09.170(7)(a)(i) to provide for timely modification should Rebecca's income increase due to her new career. Accordingly, the trial court did not abuse its discretion by not including Rebecca's potential additional income in the child support calculation.

B. *The Whole Family Formula*

Jeremiah next argues that the trial court erred in failing to consider his request for a whole family downward deviation. We agree.

---

[9] Rebecca's "pay stubs" are not included in the trial record.

No. 43025-8-II

RCW 26.19.075(e) governs downward child support deviations for parents who owe a duty of support to children from other families. RCW 26.19.075(e) instructs the trial court to use its discretion in determining whether a deviation is appropriate. This allows a trial court to decide in its discretion whether to accept the "whole family formula" as persuasive evidence warranting a deviation under RCW 26.19.075(e). *In re Marriage of Bell*, 101 Wn. App 366, 374-75, 4 P.3d 849 (2000). RCW 26.19.075(3) requires the trial court to state findings as to why it did or did not grant a requested deviation.

Jeremiah asked the trial court to consider the whole family formula downward deviation for his Clark County children when it entered its final order. The trial court refused to consider Jeremiah's request, citing his failure to give the trial court the formula prior to the final ruling. Jeremiah presented evidence of his child support obligation to his Clark County children to the trial court.

Where a party requests a deviation from the standard child support calculation, the superior court "shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court." RCW 26.19.075(3). Jeremiah clearly requested a deviation. The trial court responded by saying "[Y]ou didn't present anything to me, and I'm not gonna stop now." VRP at 204. This statement of the trial court does not satisfy RCW 26.19.075(3). The trial court's failure to explain why it denied the deviation for Jeremiah's other two children violates RCW 26.19.075(3).

12

Failing to consider Jeremiah's downward deviation request for his other two children is a failure to apply the applicable law, and thus an abuse of discretion. *See M.F.*, 141 Wn. App. at 572; *Jannot*, 110 Wn. App. at 22. We therefore vacate the child support award, and remand this issue to the trial court to exercise its discretion in determining whether a downward deviation is warranted in Jeremiah's case for his Clark County children.

C.    *The Social Security Offset*

Jeremiah argues that the trial court abused its discretion by ignoring his request to increase his Social Security offset to $201 to account for the additional amount that Social Security would pay the children after his dissolution from Rebecca. We agree.

When a parent is eligible for Social Security due to a disability, RCW 26.18.190(2) *mandates* that the trial court offset that parent's child support obligation by the entire amount that Social Security disability pays the children on the parent's behalf. *In re Parentage of Fairbanks*, 142 Wn. App. 950, 956, 176 P.3d 611 (2008). RCW 26.18.190(2)'s requirement allows no discretion. *Fairbanks*, 142 Wn. App. at 956.

The child support order, pursuant to RCW 26.18.190(2), granted an offset of $161 for each child to account for the amount Social Security pays each child. Jeremiah requested that the trial court increase that offset to $201, because Social Security would redirect Rebecca's spousal benefit to Jeremiah's four children. The trial court refused to consider Jeremiah's request. The trial court stated, "No, I'm not—the child support is based on what your income is, and it's going to stay as what is here." VRP at 201-02. Jeremiah had also raised the issue earlier during trial and the trial court did not acknowledge him.

The trial court's failure to consider Jeremiah's Social Security offset request violates RCW 26.18.190(2) and is an abuse of discretion. *See Fairbanks*, 142 Wn. App. at 956; *See also M.F.*, 141 Wn. App. at 572; *Jannot*, 110 Wn. App. at 22. We therefore vacate the child support award, and remand the issue for the trial court to determine the merits of Jeremiah's argument that RCW 26.18.190(2) requires the trial court to increase his Social Security offset credit.

## IV. INADEQUATE APPELLATE RECORD

Jeremiah argues that the trial court erred by (1) granting the anti-harassment order despite insufficient evidence of harassment, and (2) characterizing Rebecca's student loans as a community liability. We are unable to address these arguments, as Jeremiah has failed to provide an adequate record for review.[10]

### A. *The Anti-Harassment Order*

Jeremiah argues that insufficient evidence supports the anti-harassment order. Where an appellant challenges the sufficiency of the evidence, the appellant must "include in the record all evidence relevant to the disputed verdict or finding." RAP 9.2(b). An appellant "ha[s] the burden of providing an adequate record on appeal." *Story v. Shelter Bay Company*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988). If the record is insufficient on an issue, the trial court's decision "must stand." *Story*, 52 Wn. App. at 345.

Rebecca claims that her testimony provides sufficient evidence to support the anti-harassment order. Jeremiah did not provide us with Rebecca's testimony or the emails the court considered in making this decision. Thus, under *Story*, the trial court's decision stands.

---

[10] The Rules of Appellate Procedure require the appellant to provide all information necessary for review of an issue, and we may refuse to decide an issue where the record is incomplete. RAP 9.2(b); *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998); *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990).

B.      *The Student Loans*

Jeremiah next argues that the trial court erred when it characterized Rebecca's student loan debt as a community liability when calculating the transfer payment. Again, we decline to review this issue because Jeremiah failed to provide a sufficient record for review.

We review a trial court's characterization of property de novo. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).

Jeremiah argues that Rebecca left the marital home three weeks after she started school, and that Rebecca acquired the majority of the student loan debt after their legal separation. Rebecca argues that she acquired all of the student loans during the marriage. It is unclear from the record when exactly she acquired the student loans. Thus the record is insufficient for us to conduct a de novo review and, under *Story*, the trial court's decision stands.

## V. ISSUES NOT PRESERVED FOR APPEAL

Jeremiah challenges (1) Rebecca's late service of her proposed orders, (2) the child support order's Christmas eve schedule, (3) the requirement that Jeremiah must return the children to Rebecca on the Sunday before school begins, (4) the homeschooling provision, and (5) the division of daycare costs. RAP 2.5(a) allows us to refuse to review any claim of error that was not raised in the trial court, save for three exceptions that do not apply here. We exercise our discretion under RAP 2.5(a) and decline to consider these arguments, holding that Jeremiah failed to preserve these issues.

A.      *The Late Service of Proposed Orders*

Jeremiah argues for the first time on appeal that he was denied a right to a fair trial because Rebecca violated Cowlitz County Local Court Rule 88 by serving him with her

proposed orders in an untimely manner. But Jeremiah failed to raise this service issue at the trial court level, thus prohibiting the trial court from exploring or correcting the problem. Because Jeremiah did not preserve this issue for appeal, we do not consider it.

B.   *The Christmas Eve Schedule*

Jeremiah argues that the trial court erred when it ordered him to pick up AL and EL for winter vacation at 8:00 PM on Christmas eve in odd years, which is the same time his parenting plan from Clark County requires him to pick up his Clark County children in odd years. Jeremiah never raised this issue at the dissolution trial.[11] Thus Jeremiah failed to preserve this issue, and we refuse to consider it.

C.   *The "Sunday" or the "Day" Before School Begins*

Jeremiah argues that the trial court erred because the new parenting plan requires him to return the children from his winter visitation on the "Sunday before school," which allegedly reduces his residential time when home school begins in the middle of the week. Br. of Appellant at 32. At trial, Jeremiah did not raise the issue of returning the children on "Sunday" or the "day" before school begins. This is despite a discussion regarding when he would pick up and drop off his children under the new parenting plan. Thus we do not consider this issue.

D.   *The Homeschooling Provision*

Jeremiah next argues that he is no longer in favor of Rebecca home schooling EL and AL. Again, Jeremiah failed to raise the issue in the trial court. Moreover, Jeremiah asserts that he is "no longer" in agreement with the parenting plan's homeschooling provision, signaling that

---

[11] Furthermore, Jeremiah attempts to support his arguments with facts that occurred *after* trial, which are outside the record before us on appeal. We do not consider such facts. *See* RAP 9.1, 9.11; *Stiles v. Kearney*, 168 Wn. App. 250, 268, 277 P.3d 9 (2012), *review denied*, 175 Wn.2d 1016 (2012).

he changed his mind on this issue after trial. Br. of Appellant at 32. This issue was not preserved for appeal, and we refuse to consider it.

E.  *The Division of Daycare Costs*

Jeremiah next argues that the trial court should have considered daycare costs to be education costs, because Rebecca contracted to pay all education costs in exchange for an allowance to claim both children on her tax return. Jeremiah did not raise any concern about the daycare provision in the trial court. Thus, because this issue was not preserved, we do not consider it.

## VI. ISSUE RAISED IN REPLY BRIEF

For the first time in his reply brief, Jeremiah argues that Rebecca has impermissibly changed the faith that the children practice. We generally do not consider arguments raised for the first time in a reply brief. A reply brief should be limited to the scope of the brief it is replying to. RAP 10.3(c); *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990).

Jeremiah asks us to consider this issue because he did not know about the religion change until after he filed his opening appellate brief. If a legal argument for prohibiting the primary custodial parent from changing the childrens' religion exists (Jeremiah cites none), Jeremiah should raise this issue in a future petition to modify the parenting plan, rather than on appeal. Thus we do not consider the issue. Jeremiah raised it for the first time in the reply brief, and Rebecca has had no chance to respond.

We vacate the parenting plan's dispute resolution provision and the child support award. We remand to the trial court with instructions to consider whether (1) Jeremiah should receive a whole family downward deviation from the statutory child support schedule to account for his

No. 43025-8-II

two children from another marriage, (2) the child support order should have a larger offset to account for the additional Social Security money provided to the children on Jeremiah's behalf, and (3) Jeremiah's inability to pay for dispute resolution justifies removing his requirement to do so.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Maxa, J.

18