109 P.3d 15 (2005)
In re the CUSTODY OF Trina M. HALLS, Jeffrey C. Halls, Jr., and Selma Halls, Minor Children, and
Jeffrey C. Halls, Sr., Respondent, and
June Arden, Appellant.
Nos. 30761-8-II, 30948-3-II.
Court of Appeals of Washington, Division 2.
February 8, 2005.
Publication Ordered March 30, 2005.
*17 Jason Timothy Vail, Attorney at Law, Carol S. Vaughn, Thompson & Howle, Seattle, WA, for Appellant.
Jeffery C. Halls, Port Hadlock, WA, pro se.
Salvador Alejo Mungia, Gordon Thomas Honeywell, Colin Jeffrey Folawn, Gordon Thomas Honeywell, Tacoma, WA, for Amicus Curiae Circle.
Kathleen M. O'Sullivan, Perkins Coie LLP, Katherine E. Page, Perkins Coie LLP, Sally Lorraine Morgan, Attorney at Law, Rebecca S. Engrav, Perkins Coie LLP, Seattle, WA, for Amicus Curiae NW Women's Law Center.
ARMSTRONG, J.
¶ 1 June Arden appeals two permanent parenting plan modifications granting sole custody of her children to their father, Jeffrey Halls. She also challenges several contempt orders entered against her when she was not represented by counsel. Finally, she asks us to vacate a 10-year temporary restraining order the trial judge entered against her. Because the trial judge failed to follow the procedures RCW 26.09.260 requires, we reverse the two modifications. And because the trial court violated Arden's due process rights by not appointing counsel to represent her when she faced the possibility of incarceration, we also vacate the contempt orders and remand to the trial court for further proceedings. We decline to consider, however, Arden's request that we order the trial court to appoint counsel to represent her in the modification proceedings.

FACTS
¶ 2 June Arden and Jeffrey Halls have three minor children, Trina Halls (age 12), Jeffrey Halls, Jr. (age 11), and Selma Halls (age 8). The court entered a final parenting plan (Original Parenting Plan) on February 4, 2003; both Arden and Halls were represented by counsel in that proceeding. Under the plan, during the school year, the children resided with Arden and had residential time with Halls on the first and third Saturday and Sunday of each month and on certain holidays every other year. The summer schedule remained the same except Halls would have the children for the month of July. Arden and Halls had joint decision-making power.
¶ 3 In April 2003, Arden was evicted from her home. On April 7, 2003, she took the children to Red Wing, Minnesota, where she could stay in a family home. Arden and the children arrived in Minnesota on or around April 12. A few days later, Arden called *18 Halls and told him she was in Red Wing with the children. Arden did not deliver the children to Halls for their next scheduled weekend visit. At the time, Halls was not in Washington; he was visiting his mother in Wisconsin.

I. Motion for Contempt
¶ 4 On April 22, Halls moved for a contempt order, alleging that Arden violated the Original Parenting Plan by failing to give notice of her move to Minnesota and by failing to make the children available for Halls's scheduled weekend visit. Halls asked the court to sanction Arden with jail time.

II. Contempt Hearing: May 9, 2003
¶ 5 At the first contempt hearing on May 9, 2003, Arden represented herself, appearing by telephone.[1] The trial court found her in contempt of the Original Parenting Plan and ordered her confined in the Jefferson County jail.
¶ 6 On May 12, 2003, the trial court ordered Arden's release and set a show cause hearing on May 30, 2003, for Arden to appear and show cause why Halls should not have primary residential care of the children. The court did not appoint counsel to represent Arden at the May 30 hearing, and Halls had still not petitioned to modify the parenting plan.

III. Return Hearing: May 30, 2003
¶ 7 Arden again represented herself at the May 30 hearing. At that hearing, the court stated that if the children were not delivered to Halls in 24 hours, he would incarcerate Arden. The court also set a review hearing for June 13, and explained to Arden that it would appoint counsel for her at that hearing because she faced possible jail time if it found her in contempt. On May 30, the court found her in contempt of the parenting plan. And, although Halls had not yet petitioned to modify the plan, the court granted him sole custody of the children.

IV. Review Hearing: June 13, 2003
¶ 8 At the June 13, 2003 hearing, Arden was not present but a public defender appeared on her behalf. By then, Halls had custody of the children, and Arden had been visiting them on weekends. The court asked Halls, "Want me to put her in jail or are you satisfied?" Report of Proceedings (RP) (June 13, 2003) at 33. Halls stated that he was not asking the court to incarcerate Arden. Instead, his attorney asked the court "to enter a new Parenting Plan that reflects what's going on now." RP (June 13, 2002) at 33.
¶ 9 The public defender, Richard Davies, moved to withdraw as Arden's counsel, stating that he understood he was to represent Arden only as to the threat of imprisonment. The court allowed Davies to withdraw and then entered a final judgment and modified parenting plan (First Modified Parenting Plan).
¶ 10 The First Modified Parenting Plan changed the children's primary residence from Arden to Halls. The parties retained joint decision making authority. Nothing in the record shows that Halls petitioned to modify the Original Parenting Plan.

V. Motion for Reconsideration
¶ 11 Arden asked the court to reconsider the first parenting plan modification and the May 30, 2003 contempt order. The court denied the motions on July 21, ruling that because "it was not in the children's best interest to be denied visitation with their father, the Court changed their residence. It's up to the father's lawyer to straighten out the paperwork." Clerk's Papers (CP) at 122-23.

VI. Notice of Appeal and Petition for Modification of Parenting Plan
¶ 12 Arden appealed to this court on August 19, 2003. On August 22, while the appeal was pending, Halls petitioned to modify the Original Parenting Plan. Appearing pro se, Arden opposed the petition.

*19 VII. Contempt Hearing: September 5, 2003
¶ 13 On September 5, 2003, the trial court heard Halls's motion for an order finding Arden in contempt of the First Modified Parenting Plan and for entry of a new parenting plan "that doesn't leave any room for error." RP (Sept. 5, 2003) at 3. Halls alleged that Arden failed to return the children on time. Arden, again representing herself, denied that she had failed to comply with the parenting plan.
¶ 14 The trial court found Arden in contempt, entered a new final parenting plan (Second Modified Parenting Plan), and entered a temporary order (Temporary Order) restraining Arden from (1) molesting or disturbing the peace of Halls or any child; (2) entering Halls's home, the grounds of his home, or his workplace; or (3) entering the children's schools. The order also restrained her from removing the children from Jefferson County. While labeled "[t]emporary," the order does not expire until 2013 (10 years from the date of the order). CP at 188.
¶ 15 As to this last ruling, the court reasoned: "All it takes is two contempts and the Court can change the Parenting Plan without further findings." RP (Sept. 5, 2003) at 8. The Second Modified Parenting Plan ordered that the children reside with Halls; it allowed Arden visitation for two weekends a month, two blocks of two weeks each during the summer, and certain holidays every other year. It also delegated major decision making authority to Halls.

VIII. Second Notice of Appeal
¶ 16 On October 3, 2003, Arden appealed a second time, challenging the most recent contempt order, the Second Modified Parenting Plan, and the Temporary Order. We consolidated the appeals. Due to Halls repeated failure to file a brief or make a motion to extend time, we precluded him from filing a brief or presenting oral argument.[2]

ANALYSIS

I. Entry of the Modified Parenting Plans Violated RCW 26.09.260
¶ 17 Arden argues that the trial court entered a series of orders that violated the substantive and procedural rules governing the modification of final parenting plans. Specifically, she argues that the court modified a final parenting plan without a pending petition for modification, an adequate cause hearing, or adequate consideration of the statutory criteria. We agree.
¶ 18 Generally, we review a trial court's rulings about the provisions of a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wash.2d 39, 46, 940 P.2d 1362 (1997) (citing In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993)); In re Marriage of Wicklund, 84 Wash.App. 763, 770, 932 P.2d 652 (1996). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Littlefield, 133 Wash.2d at 46-47, 940 P.2d 1362 (citing Kovacs, 121 Wash.2d at 801, 854 P.2d 629); Wicklund, 84 Wash.App. at 770 n. 1, 932 P.2d 652. A decision is manifestly unreasonable if, based on the facts and the applicable legal standard, the decision is outside the range of acceptable choices. In re Parentage of Schroeder, 106 Wash.App. 343, 349, 22 P.3d 1280 (2001) (citing Littlefield, 133 Wash.2d at 47, 940 P.2d 1362).
¶ 19 RCW 26.09.260 sets forth the procedures and criteria to modify a parenting plan. These procedures and criteria limit a court's range of discretion. In re Marriage of Hoseth, 115 Wash.App. 563, 569, 63 P.3d 164 (citing In re Marriage of Shryock, 76 Wash.App. 848, 852, 888 P.2d 750 (1995)), review denied, 150 Wash.2d 1011, 79 P.3d 445 (2003). Accordingly, a court abuses its discretion if it fails to follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria. Hoseth, 115 Wash.App. at 569, 63 P.3d 164.
*20 ¶ 20 Under RCW 26.09.260, the court may modify a parenting plan only if it finds "a substantial change has occurred in the circumstances of the child or the nonmoving party and... the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). These findings must be based on "facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan." RCW 26.09.260(1). We employ a strong presumption against modification because changes in residences are highly disruptive to children. Schroeder, 106 Wash.App. at 350, 22 P.3d 1280 (citing In re Marriage of McDole, 122 Wash.2d 604, 610, 859 P.2d 1239 (1993)). Thus, the moving party must prove that a modification is appropriate. Schroeder, 106 Wash.App. at 350, 22 P.3d 1280 (citing George v. Helliar, 62 Wash.App. 378, 383-84, 814 P.2d 238 (1991)).
¶ 21 A substantial change has occurred when "[t]he court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan." Schroeder, 106 Wash.App. at 350, 22 P.3d 1280 (citing RCW 26.09.260(2)(d)). Thus, when one parent prevents another from having contact with a child in violation of the parenting plan, a court may consider these violations in deciding whether to change the children's residence. See, e.g., McDole, 122 Wash.2d at 610-11, 859 P.2d 1239; Velickoff v. Velickoff, 95 Wash.App. 346, 357-58, 968 P.2d 20 (1998). But absent a finding that modification is in the best interests of a child, the court may not modify for mere violations of the parenting plan. See e.g., Thompson v. Thompson, 56 Wash.2d 244, 250, 352 P.2d 179 (1960); Schroeder, 106 Wash.App. at 351, 22 P.3d 1280.
¶ 22 RCW 26.09.181 requires a petitioning party to file and serve his motion to modify with a proposed parenting plan. Further, under RCW 26.09.270, a party seeking to modify a parenting plan must submit with his motion "an affidavit setting forth facts supporting the requested ... modification and shall give notice, together with a copy of his affidavit, to other parties to the proceedings, who may file opposing affidavits." And the court must deny the motion unless it finds adequate cause from the affidavits to hear the motion. RCW 26.09.270. Jefferson County's local rules also require a petition and the "affidavits as required by RCW 26.09.270." J.C.L.R. 94.
¶ 23 Halls filed only a motion for contempt. And the motion complied with none of the requirements of RCW 26.09.270. It did not ask for a modification of the parenting plan; it provided no basis for an adequate cause finding (and the court did not find adequate cause); and it gave Arden no notice that Halls sought to modify the parenting plan. Because of these basic procedural flaws, the court lacked authority to modify the parties' parenting plan.
¶ 24 In addition, the First Modified Parenting Plan states that it was entered following an "order entered on May 30, 2003." CP at 40. The only order appearing in the record entered on May 30, 2003, is a contempt order. In the section of the order reserved for allocating additional residential or make-up time, the court wrote "[Halls] is granted sole custody" of the children "pending further order." CP at 30. This grant of sole custody was an improper exercise of the court's contempt power, deviating from the contempt remedies RCW 26.09.160 provides.
¶ 25 Moreover, the court never found that a modification was in the children's best interests. Rather, the court found "that it was not in the children's best interest to be denied visitation with their father." CP at 123. This does not meet the statutory best interests requirement. Finding that it was not in the children's best interest to be denied visitation with their father is not the same as a finding that a changed primary residential parent was in their best interests. Specifically, the court did not find that living with their father or removing them from their mother's care was in their "best interests."

A. Second Modified Parenting Plan

¶ 26 The Second Modified Parenting Plan suffers from some of the same defects *21 as the first. Again, the court held no adequate cause threshold hearing RCW 26.09.270 and Jefferson County Local Rule 94 requires. And the court concluded that "[a]ll it takes is two contempts and the Court can change the Parenting Plan without further findings." Appellant Br. at 18. But the court cannot modify a parenting plan solely on the basis of "two contempts." RCW 26.09.260(1) requires, in addition to contempt findings, a finding that the proposed change is in the children's best interests. See Schroeder, 106 Wash.App. at 351, 22 P.3d 1280 (stating that absent a finding that modification is in the best interests of a child, the mere violation of the parenting plan cannot per se require a change in custody when such change is contrary to the best interests of the child). Thus, we reverse the order granting the Second Modified Parenting Plan.[3]

B. Temporary Order

¶ 27 Arden argues that entry of the 10-year Temporary Order was actually an impermissible, permanent parenting plan modification. Again we agree.
¶ 28 In In re Marriage of Christel and Blanchard, 101 Wash.App. 13, 24, 1 P.3d 600 (2000), the court held that a temporary order amounted to an impermissible modification. The court found that the trial courts order establishing a new dispute resolution procedure for matters affecting the parties child had a permanent effect on the parenting plan, and because no petition to modify had been submitted, the modification was impermissible. Christel, 101 Wash.App. at 23-24, 1 P.3d 600. Accordingly, the court vacated the trial court's "Temporary Order," finding an abuse of discretion. Christel, 101 Wash.App. at 24, 1 P.3d 600.
¶ 29 The Temporary Order here has the same permanent effect. It restricts Arden's right to travel with her children outside of Jefferson County and prohibits her from going to the children's residence or schools for 10 years. By the time the order expires, all of Arden's and Halls's children will have reached the age of majority and the parenting plan will no longer apply to them. And Halls submitted no petition to modify and no adequate cause affidavits, and the court did not find facts sufficient to modify the parenting plan. Thus, we vacate the order.

II. Contempt Orders
¶ 30 Arden argues that independent of the RCW 26.09.260 violations, the Second Parenting Plan Modification must be overturned because it is premised on findings of contempt that were entered in violation of due process. Although the issue is likely moot because we have reversed the First and Second Parenting Plan Modifications for procedural flaws, we consider the issue because the contempt orders may be a factor in future proceedings.

A. Right to Counsel in Contempt Proceedings

¶ 31 In proceedings civil in form but criminal in nature, due process rights to liberty, the Sixth Amendment, and Washington Constitution article 1, section 22, require that a party threatened with jail be represented by counsel. See Tetro v. Tetro, 86 Wash.2d 252, 253, 544 P.2d 17 (1975) (citing In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). Accordingly, wherever a contempt adjudication may result in incarceration, the person accused of contempt must be provided with state-paid counsel if she is unable to afford private representation. Tetro, 86 Wash.2d at 253, 544 P.2d 17 (citations omitted); see also, In re Grove, 127 Wash.2d 221, 237, 897 P.2d 1252 (1995).
¶ 32 Arden faced jail time at the May 9, May 30, and June 13 contempt hearings, and the trial court knew she was indigent. At one hearing, the public defender initially represented her, but then withdrew before the hearing concluded. At another hearing, her attorney was present but did not represent her, explaining that he was withdrawing and was not prepared to represent her. The court should have appointed counsel to represent Arden throughout these hearings. It *22 did not and we, therefore, vacate the contempt orders.

III. Due Process in Modification of Parenting Plan Proceedings.
¶ 33 Arden argues that under the due process clause of the Fourteenth Amendment to the United States Constitution and article 1, sections 10 and 32 of the Washington State Constitution, she is entitled to appointed counsel in the modification proceedings. She asks that we direct the trial court to appoint counsel to represent her on remand.[4] But the issue is not before us yet.
¶ 34 Although not part of the appeal record, counsel advised us during oral argument that the children are back living with Arden. In addition, Halls has not participated in the appeal process, ignoring our letters and order concerning his right to file a brief and argue the case. Given this history, we question whether a real dispute still exists between the parties.
¶ 35 In addition, if there is a dispute on remand, we do not know whether Arden would now qualify as indigent. Moreover, Halls asked to modify the parenting plans only because of Arden's alleged contempts. But as we have discussed, contempt findings alone will not support a parenting plan modification. If Halls still seeks modification, he must file a new petition alleging more than contempt. We do not know what such allegations might be or whether the contempt proceedings would necessarily threaten Arden with incarceration. Yet Arden asks for an attorney on the modification because it is so interwoven with the contempt issues. In short, without knowing whether the parties still have a dispute and the parameters of the dispute, we are unwilling to issue an advisory opinion.
¶ 36 We reverse and vacate the May 9, May 30, and September 8, 2003 contempt orders; we also vacate the First and Second Modified Parenting Plans and the Temporary Order. We remand to the trial court for further proceedings.
We concur: HUNT, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Also present was an attorney, James Bendell, who had withdrawn as Arden's counsel and did not represent her.
[2] Halls failed to file a response brief by March 15, 2004, as required. We repeatedly informed Halls that he must file a brief or face sanctions. Because Halls nevertheless failed to timely file a brief, we precluded him from arguing. RAP 11.2(a).
[3] Halls also violated RAP 7.2(e). Arden had appealed the first modification before Halls presented his second modification. Under RAP 7.2(e), the trial court could not enter an order that affected the appeal without first obtaining our permission. It did not.
[4] No Washington case has held that a party to a child custody dispute is entitled to representation at State expense.