## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of<br>EDWARD JOHN LANGE, JR.,<br><br>                       Respondent,<br><br>   and<br><br>TAMMY RENEE LANGE,<br><br>                     Appellant. | No.  46904-9-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — Tammy Lange appeals the superior court's final parenting plan entered in the dissolution proceeding between herself and Edward Lange Jr.  Tammy[1] argues that the trial court erred by (1) failing to consider "the cumulative nature of her parenting ability," Br. of Appellant 7, (2) failing to consider Edward's alleged domestic violence against Tammy, and (3) considering the bias witness testimony of the children's counselor.  Because the trial court did not abuse its discretion we reject Tammy's claims and affirm the trial court.

---

[1] Because Edward and Tammy have the same last name, this document uses their first names; no disrespect is intended.

FACTS

Tammy Lange and Edward Lange Jr. were married for eighteen years and had two children together.[2] Edward supported the family through his employment with the United States Navy. During Edward's frequent deployments, Tammy was the primary caregiver for the children.

Edward and Tammy had a tumultuous marriage involving "drunken brawls" and excessive fighting. Verbatim Report of Proceedings (VRP) (Sept. 10, 2014) at 317. Before he deployed in August 2012, Edward decided to separate from Tammy. When he returned on May 3, 2013, he did not return to the family home.

After receiving news of the separation, Tammy began exhibiting distressing behavior, and the stability of the home rapidly deteriorated. Tammy alleged that Edward possessed child pornography. The allegations were found to be unsubstantiated by the Naval Criminal Investigative Service (NCIS). On May 7, 2013, Tammy's neighbors called 911 after hearing Tammy screaming. When police arrived, they found Tammy drunk with cuts on her wrist, and it appeared she had locked herself in her bedroom and attempted to set her bed on fire after removing the smoke alarm from her room. Both children were home at the time of the incident.

On May 10, 2013, local law enforcement received a report from Eastern Washington University Police Department of an alleged sexual assault by Edward against Tammy's oldest daughter allegedly occurring many years prior. While in custody for intoxication, Tammy's daughter told police that Edward had exposed himself to her. Because the daughter refused to

---

[2] The children were aged 16 and 15 at the time of dissolution.

give any further disclosures, the allegations were found to be unsubstantiated by NCIS. On May 11, 2013, Tammy obtained a military protective order (MPO) based on allegations of domestic violence over an undetermined period of time prohibiting Edward from contacting Tammy. The allegations of domestic violence were found to be unsubstantiated, but the Navy, nonetheless, maintained the MPO.

On October 8, 2013, police responded to another incident at Tammy's apartment involving a physical fight between Tammy and her daughter. The daughter was taken into detention where it was discovered that she had been engaging in self-harm cutting allegedly to distract herself from Tammy. On October 17, 2013, Tammy drunkenly fought with her children—punching, slapping, and biting them— before passing out. Following this incident the children were removed from Tammy's home and eventually placed with Edward.

In December 2013, the children and Edward began group family counseling with mental health counselor David Stehman. Stehman was referred to the family by the Center for Child and Family through the Department of Social Health Services.[3] Stehman occasionally met with both children without Edward but never conducted individual counseling with each child.

At trial, the court heard testimony from Edward, Tammy, and Stehman. At the conclusion of trial, the court explained that it took both Edward's and Tammy's accounts of each

---

[3] Throughout her brief Tammy contends that Stehman was Mr. Lange's personal counselor before Stehman began counseling the children. This is not supported by the record and her citation to the record is a reference to her own notice of appeal.

other with a grain of salt. The court scheduled a time for giving its oral ruling on the parenting plan.[4]

The final parenting plan assigned full residential time and decision making to Edward after finding Tammy committed abuse against a child under RCW 26.09.191(1) and (2), and that she suffered a long-term impairment resulting from alcohol abuse that interferes with her performance of parenting functions under RCW 26.09.191(3). The trial court conditioned future visitation between Tammy and the children upon Tammy's obtaining a drug and alcohol evaluation, following any recommendations of the evaluation, and continuing to attend counseling.

The trial court ordered that after Tammy had completed these steps she could request in-person visitation with the children through her and the children's counselors, who would initiate joint therapy after determining it was in the children's best interests. The court permitted Edward and the children to continue group counseling with Stehman but ordered that the children immediately obtain individual counselors other than Stehman to address their individual needs.[5] The parenting plan noted, "The children spent most of their lives alone with their mother and, if she is sober, she is not a threat to them. Further, the children are both old enough to leave a toxic encounter or to seek other protections." Clerk's Papers (CP) at 653.

---

[4] The trial court's oral ruling is not part of the record on appeal.

[5] Contrary to Tammy's version of the facts, the parenting plan did not condition visitation upon any approval of Stehman.

No. 46904-9-II

Tammy appeals.[6]

## ANALYSIS[7]

Tammy argues the trial court erred by (1) failing to consider the cumulative nature of Tammy's parenting ability, (2) failing to consider that Edward abused Tammy, and (3) considering bias witness testimony from Stehman. We hold that the trial court did not err.

### I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Trial courts are granted broad discretion when it comes to matters dealing with the welfare of children as they are in a unique position to observe the parties to determine their credibility and to sort out conflicting evidence. *In re Marriage of Woffinden*, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982). Appellate courts are "extremely reluctant to disturb child placement dispositions." *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996)). We review a trial court's rulings about the provisions of a parenting plan for abuse of discretion. *In re Custody of Hall*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion

[6] Tammy's notice of appeal states that she seeks review of virtually every decision made by the superior court. However, in her brief she only makes three assignments of error all seeming to pertain to the final parenting plan. We hold she has abandoned her other arguments.

[7] We note that Tammy's brief is barely adequate in substance and law to address her claims. Tammy offers little to no legal argument or authority supporting her claims. Rather, she simply reiterates her inaccurate version of the facts, frequently misstating the facts in record, referencing her own statements and her notice of appeal as evidence of fact, and misrepresenting the terms of the parenting plan. Of the five citations to authority contained in Tammy's entire brief, three of these citations are unpublished appellate decisions. GR 14.1(a) prohibits citing unpublished Washington Court of Appeals opinions as authority. Despite these nearly fatal flaws, we use our discretion to address the merits of Tammy's claim given the fundamental importance of the parent-child relationship served by a parenting arrangement.

5

if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. 126 Wn. App. at 606. A decision is manifestly unreasonable if, based on the facts and the applicable legal standard, the decision is outside the range of acceptable choices. 126 Wn. App. at 606. The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). We defer to the trial court on issues of conflicting testimony and witness credibility. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

Tammy argues that in issuing its final parenting plan the trial court failed to "consider the cumulative nature of [Tammy's] parenting ability" and that Edward abused Tammy. Br. of Appellant 7. However, Tammy does not assign error to the trial court's findings that Tammy engaged in the physical abuse of a child and had a long-term impairment resulting from alcohol abuse that interferes with her performance of parenting functions, which mandated that the trial court significantly limit both Tammy's decision-making authority and residential time with the children.

The "'best interests of the child'" control when determining who will parent a child daily. *Schroeder*, 106 Wn. App. at 349 (quoting RCW 26.09.002). RCW 26.09.187 forms the criteria for establishing permanent parenting plans. RCW 26.09.187[8] reads in relevant part:

---

[8] Where the limitations of RCW 26.09.191 are not dispositive, RCW 26.09.187(3)(a) enumerates seven factors the court must consider in determining the residential provisions of a parenting plan. Because Tammy did not provide this court with the trial court's oral ruling, this court cannot evaluate whether the trial court found RCW 26.09.191 dispositive or if it considered the seven factors outlined in RCW 26.09.187(3)(a). Regardless, the "cumulative nature" of a parent's "parental ability" is not one of the seven factors.

(2)    ALLOCATION OF DECISION-MAKING AUTHORITY.
. . .
(b)    SOLE DECISION-MAKING AUTHORITY.  The court shall order sole decision-making to one parent when it finds that:
(i)    A limitation on the other parent's decision-making authority is mandated by RCW 26.09.191;
. . .
(3)    RESIDENTIAL PROVISIONS.
(a)    . . . The child's residential schedule shall be consistent with RCW 26.09.191.

RCW 26.09.191 in pertinent part states:

(1) The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in . . . (b) physical . . . abuse of a child . . . .
(2)(a) The parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . (ii) physical . . . abuse of a child . . . .
(3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
. . .
(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions.

RCW 26.09.191 is unequivocal.  Once the trial court finds that a parent engaged in physical abuse, it must not require mutual decision-making and it must limit the abusive parent's residential time with the child.  *In re Marriage of Mansour*, 126 Wn. App. 1, 10, 106 P.3d 768 (2004); RCW 26.09.191(1), (2).  The trial court found that Tammy engaged in physical abuse of a child, therefore the trial court was required to significantly limit Tammy's residential time with her children.  Additionally, the trial court's decision to limit Tammy's involvement with the children was further supported by its finding that Tammy suffered from a long-term impairment resulting from alcohol abuse that interferes with the performance of parenting functions.

Tammy presented evidence of Edward's alleged abuse against her at trial, but there was no evidence that Edward committed any violence against the children.[9] Given the trial court's finding that Tammy abused the children, and no similar finding as to Edward, the trial court's parenting plan determination was mandated by RCW 26.09.191 and was not an abuse of discretion.

Although Tammy does not assign error to the trial court's finding of physical abuse of a child or impairment from alcohol abuse, Tammy presents a different version of facts in her brief. She argues that all CPS's findings were unfounded, that she had no history of assaultive behavior, and that there is no history of alcohol or drug use. This is incorrect. The record contains CPS reports describing at least six separate incidents involving Tammy and the children during 2013. Every incident described Tammy as severely under the influence of a substance, often to a point that rendered her incoherent and sometimes unresponsive. The final incident, occurring on October 17, 2013, involved an intoxicated Tammy assaulting both the children. That incident resulted in the children being removed from Tammy's care and an order by an administrative law judge found that Tammy had physically abused both the children. Tammy cites a single notation in the first CPS report reading: "Historical or Current Alcohol/Drug use identified: No" as evidence that she has no problem with substance abuse. Sealed CP (1) at 161. The entirety of the record clearly demonstrates otherwise.

---

[9] Tammy contends that Mr. Lange "admits to abusing Tammy emotionally and physically at the date of trial." Br. of Appellant 14. His actual statement at trial was, "I have laid hands on you, yes, as well as you laying hands on me." VRP (Sept. 9, 2014) at 127. The trial court concluded that the two of them engaged in "drunken brawls."

Given its findings of RCW 26.09.191(1), (2), and (3) factors, the trial court did not abuse its discretion in limiting Tammy's time with the children.

## II. ISSUE RAISED FOR THE FIRST TIME ON APPEAL

Tammy also argues that the trial court erred by considering bias witness testimony by Stehman. It is unclear from her brief whether Tammy takes issue with Stehman's testimony being admitted into evidence, or whether she is challenging the court's alleged reliance on Stehman's testimony in issuing the final parenting plan. Either way, her claim fails because Tammy failed to preserve the issue for appeal.

Tammy did not object to Stehman's testimony at trial. We do not consider issues raised for the first time on appeal. *In re Marriage of Knutson*, 114 Wn. App. 866, 871, 60 P.3d 681 (2003); RAP 2.5(a).[10]

## ATTORNEY FEES

Edward requests costs and fees pursuant to RAP 18.1. He argues that Tammy's appeal is frivolous and meritless. RAP 18.9(a) allows us to order the losing party to pay the prevailing party its attorney fees on appeal if the appeal was frivolous. "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." *Foisy v. Conroy*, 101 Wn. App. 36, 42, 4 P.3d 140 (2000) (quoting *Delany v. Canning*, 84 Wn. App. 498, 510, 929 P.2d 475 (1997)).

---

[10] RAP 2.5(a) excepts "manifest error[s] affecting a constitutional right." However, Tammy makes no argument, nor presents any facts, suggesting any manifest error occurred.

No. 46904-9-II

Given Tammy's lack of legal argument and authority, and her reliance on untrue or mispresented

facts, we grant Edward's request for costs and fees.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Melnick, J.

10