IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TONY BALEVSKI,<br><br>               Respondent,<br><br>      v.<br><br>ALEKSANDRA DANILOV,<br><br>               Appellant. | No. 84464-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — The parenting plan for the shared child of Tony Balevski and Aleksandra Danilov assigns sole decision-making for "Health care (not emergency)" to the mother except for "major medical decisions like non-emergency surgery or any uninsured care." The father, Balevksi, requested arbitration to include the COVID-19 vaccine as a joint decision. The arbitrator and trial court both determined that the COVID-19 vaccine and vaccines in general were "major medical decisions" and subject to joint decision-making. Danilov appeals. We conclude that the trial court did not err in determining that, based on the specific facts and the language of the parenting plan in this case, vaccinations are a major medical decision requiring joint decision-making by the parents. Additionally, the trial court did not abuse its discretion in determining that vaccination for COVID-19 and influenza was in the best interests of the child and ordering the child to receive the vaccines. Therefore, we affirm.

FACTS

Aleksandra Danilov and Tony Balevski married on January 1, 2011, and separated on April 1, 2011. Their son, P.D., was born July 14, 2011. Balevski petitioned for dissolution soon after. The court entered a final parenting plan on November 26, 2012. Danilov and P.D. relocated to Colville, WA in 2018. As a result of the relocation, with the help of a mediator, the parties entered into a stipulated CR 2A agreement regarding modifying the parenting plan in August 2019, and a modified final parenting plan was entered in July 2020, which included monthly visitation with Balevski.

The Agreed Modified Final Parenting Plan provides Danilov with sole authority to make major decisions over "Health care (not emergency)," except "[t]he parties will have joint decision making on major medical decisions like non-emergency surgery or any uninsured care." For parental disagreements, the Agreed Modified Final Parenting Plan requires arbitration per RCW 7.04A with the option to "go to court if you disagree with the arbitrator's decision."

The COVID-19 pandemic exacerbated the challenges of a long-distance relationship between Balevski and his son, with illness and quarantine resulting in missed visits. At the end of 2020, Balevski requested arbitration to address several issues related to navigating the COVID-19 pandemic, including a request that whether P.D. would receive the COVID-19 vaccine would be a joint decision. The arbitrator decided against joint decision-making for the COVID-19 vaccine. "It is not an emergency; it is a vaccine like all other vaccines. The mother may

make this decision, but will advise the father in advance when it will occur as soon as she knows about the appointment." Balevski requested clarification of the arbitrator's decision, which he received in January 2021. The arbitrator stated that "[i]f and when the child becomes eligible for a vaccination . . . the mother will advise the father . . . what her decision is regarding the vaccine for their child."

In late fall 2021, the U.S. Food and Drug Administration authorized the emergency use of the COVID-19 vaccine for P.D.'s age group. Balevski wanted the child vaccinated and raised the issue with Danilov in January 2022. Danilov disagreed, arguing that P.D. already had contracted COVID-19 and had developed "the antibodies and full natural immunity." Balevski submitted the issue to arbitration again on January 28, 2022. On March 31, 2022, the arbitrator announced,

> [a]fter reviewing the submissions herein and the declarations of the parties' experts, I reverse myself *sua sponte* and find that the COVID-19 vaccination is a joint decision under the Parenting Plan. The reasoning is that I find the father's expert's information regarding the consequences for children of [P.D.'s] age to be both compelling and reasonable.

The arbitrator addressed whether vaccines fall within the category of "major medical decisions" and reasoned that the mother has sole decision-making on health care (non-emergency), but the father retains joint decision-making for "things that are out of the ordinary or uninsured." The arbitrator reasoned, "[i]n this instance, and based on the wording of the Parenting Plan, I find that vaccines are a joint decision. After reading more science regarding vaccinations and receiving the father's expert opinion, it is clear to me that the COVID-19

3

vaccine should be considered a major medical decision." The arbitrator ordered P.D. to receive the COVID-19 vaccination and boosters. The arbitrator also considered Balevski's request to have P.D. vaccinated for influenza:

> [a]fter reading both the CDC website on the issue of vaccines, and having the general knowledge that the flu has been a pandemic in the past (such as H1N1 and the Spanish flu) and the importance of this issue to both parents, I find that all future vaccines will be joint decision.

The arbitrator found it reasonable that the father requested P.D. receive a flu vaccination.

Danilov asked the arbitrator to reconsider the decision because "this decision amounts to a forced mandate and becomes a unilateral decision by the [father]." She argued that her expert, P.D.'s physician, provided information specific to the child and found her decision not to vaccinate to be sound. The arbitrator declined to reconsider the decision on vaccinations.

In June 2022, Danilov filed two motions with the King County Superior Court, a motion to review/vacate the arbitration decision and a motion to stay the arbitrator's decision pending appeal/trial de novo. A commissioner stayed the arbitrator's decision pending a hearing before a judge. On August 2, 2022, the trial court heard arguments from the parties, and on August 9 issued an order granting the motion to stay vaccination in order to conduct a hearing on whether the child should be vaccinated. At that time, the court also issued an interpretation of the Agreed Modified Final Parenting Plan provision on medical decision-making: "This Court interprets COVID vaccine and vaccinations in

general to be a major medical decision requiring joint decision making pursuant to . . . the parties' Agreed Modified Final Parenting Plan." The court identified the issue for the upcoming hearing as "whether the child is to be vaccinated."

In briefing to the trial court for the hearing on vaccination, Danilov requested that the court determine she has sole decision-making power over vaccinations and "find there is no judicial authority to mandate the minor child receive the COVID vaccine and/or the influenza vaccine." During that hearing, the court declined to revisit the issue of who had decision-making power regarding the COVID vaccine. Rather, the court "want[ed] to focus on the pros and cons to this young man, young boy, for the vaccine." The court stated it had reviewed "the considerable materials" provided by the parties and listened to their arguments.

In its decision issued on August 29, 2022, the court found the Centers for Disease Control and Prevention (CDC) evidence presented by Balevski was more persuasive as to what is in the child's best interests. The court also noted that Danilov did not refute the CDC evidence or the testimony from Balevski's experts; "[w]hat she does instead is raise an almost impossible bar of what evidence would be required to satisfy her concerns about the vaccine." The court found her contentions that the COVID-19 vaccine is dangerous, generally or specifically to her son, to be speculative and contradicted by expert evidence. The court noted that the evidence in support of the influenza vaccine similarly supported determining that the benefits outweigh the detriments. The court

concluded that "the arbitrator's decision regarding vaccination for the child was absent either legal or factual error. Her reasoning was thorough and clear and this Court adopts it," and ordered that P.D. receive vaccines for both COVID-19 and influenza.

Danilov filed an appeal of the trial court's August 9 and August 29 decisions with this court and obtained an order to stay the trial court's orders pending that appeal.

DISCUSSION

RCW 26.09.184(4) requires parenting plans to include a process for resolving disputes other than a court action. However, "[t]he ultimate responsibility for overseeing the performance of the parenting plan remains with the court." In re Smith-Bartlett, 95 Wn. App. 633, 640, 976 P.2d 173 (1999). Thus, the terms of Danilov and Balevski's Agreed Modified Final Parenting Plan and RCW 26.09.184(4)(e) both provide the parties the right of review from the dispute resolution process to the superior court. The trial court reviews the arbitrator's decision de novo. Smith-Bartlett, 95 Wn. App. at 641 (citing former RCW 26.09.184(3)(e)).

I.      Parenting Plan and Health Care Decision-Making

Danilov assigns error to the trial court's entry of the August 9 order staying the arbitrator's decision and interpreting the health care decision-making provision of the Agreed Modified Final Parenting Plan to include the COVID-19 vaccine, and vaccines in general, as major medical decisions subject to joint

decision-making. She argues the trial court abused its discretion by exceeding its authority and overlooking procedural standards because the court provided its interpretation of the medical decision-making provision, rather than simply ruling on the requested stay. She also alleges the trial court abused its discretion by failing to consider the reasons the original parenting plan had granted her sole decision-making over health care.

     A.     <u>Trial Court Procedure</u>

Danilov contends her motion sought only to stay the arbitrator's decision pending review and complains that she did not have the opportunity to submit briefing relevant to interpretation of the decision-making provision including intent and history of the parties. According to Danilov, the trial court interpreted the provision in "complete reliance on the Agreed Modified Final Parenting Plan decision making provision without any consideration of legal standards and in complete disregard for procedural standards as well as the child's best interest." She also complains that "the trial court with <u>no</u> motion, declarations, nor any relevant briefing on the specific topic" interpreted the medical decision-making power.

Danilov misconstrues the record. She filed a motion to stay the order to vaccinate "pending appeal/trial de novo in regard to vaccination of the minor child." She simultaneously filed a motion for the court to review and vacate the arbitration award, which asked the trial court "to determine if vaccines are joint decision and fall under non-emergency surgery or uninsured medical costs" and

if vaccination should be mandated for P.D. Thus, she asked the court to interpret the parenting plan's provisions on medical decision-making.

In support of the two motions, Danilov appended 28 exhibits that included documents pertaining to the original final parenting plan entered in 2012, the 2020 CR 2A agreement and resulting Agreed Modified Final Parenting Plan, all of the briefing from both parties and arbitrator decisions pertaining to the vaccination issue, and declarations discussing her concerns about the arbitrator's decisions. Given that she submitted a motion and supporting evidence for review of the arbitrator's interpretation of the provision, it is unclear what additional information she would have provided to the trial court that was relevant to the court's de novo review of the arbitrator's interpretation of the Agreed Modified Final Parenting Plan provision.

Additionally, the trial court's de novo review of the arbitrator's decision did not entitle Danilov to a trial de novo with new evidence. A trial de novo is conducted as though no arbitration had occurred. Smith-Bartlett, 95 Wn. App. at 641. However, for arbitration on a parenting plan, the trial court does not conduct a trial de novo; rather, the court reviews the arbitrator's decision. Id. The briefing and extensive record Danilov submitted with her two motions provided the court with the materials needed to conduct its de novo review of the arbitrator's decisions and interpretation of the parenting plan. The court also allowed the parties to submit additional briefing and materials before it heard argument on that issue on August 24. Danilov identifies no way in which she was prejudiced

by the court's management of the motions. The trial court's decision to rule first on the motion to stay and the issue of whether vaccination was subject to joint decision-making based on the record provided, followed by a hearing on whether to vaccinate P.D., was not an abuse of discretion.

      B.      <u>Parenting Plan Decision-Making Provisions</u>

Danilov contends the trial court erred by "applying an incorrect legal standard when interpreting" the medical decision-making provision of the Agreed Modified Final Parenting Plan. According to Danilov, interpretation of major medical decisions to include vaccinations would require a modification of the parenting plan. We disagree.

A court "shall not modify" a prior parenting plan unless a substantial change in circumstances has occurred and modification is in the best interests of the child. RCW 26.09.260(1). "Modifications are any increases or reductions to the rights originally granted to a party." <u>In re Marriage of Coy</u>, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011). In contrast, a clarification is a definition of the rights which have already been granted. <u>In re Marriage of Holmes</u>, 128 Wn. App. 727, 734-35, 117 P.3d 370 (2005). Here, the parties sought to clarify or interpret the extent of Danilov's sole and the parties' joint medical decision-making power under the Agreed Modified Final Parenting Plan. These were not modifications to the plan subject to the requirements of RCW 26.09.260.

On appeal, we review the trial court's interpretation of the parenting plan de novo. <u>Smith-Bartlett</u>, 95 Wn. App. at 636. The Agreed Modified Final

9

Parenting Plan assigns Danilov sole decision-making for "Health care (not emergency)" except "[t]he parties will have joint decision making on major medical decisions like non-emergency surgery or any uninsured care." Danilov argues for an interpretation of vaccines as routine healthcare decisions because "[v]accinations are done by a primary care physician at a well-child check or other non-emergency office visit." Danilov also argues, "The trial court did not consider the totality of causation for the mother having sole decision making over the healthcare of the child or the history of the parties' participation in health-related concerns." She claims that "Balevski's intent for the decision-making caveat was solely focused on monetary forethought. Balevski did not want to pay for any costs for Danilov's choices regarding the medical expense of [P.D.]."

In all proceedings under ch. 26.09 RCW, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. The best interests of the child are more readily achieved when judicial officers have "discretion to tailor individualized resolutions." RCW 26.09.003. To this end, "[j]udicial officers should have the discretion and flexibility to assess each case based on the merits of the individual cases before them." RCW 26.09.003; see In re Marriage of Chandola, 180 Wn.2d 632, 658, 327 P.3d 644 (2014) ("Trial courts have broad discretion to create parenting plans tailored to the needs of the individuals involved in a particular dissolution.").

Following this individualized approach, we interpret the healthcare decision-making power of the parenting plan at issue based on the unique circumstances of the case. The parenting plan states that "[t]he parties will have joint decision making on major medical decisions like non-emergency surgery or any uninsured care." The dictionary definition of the word "major" includes "greater in . . . importance, or interest," as well as "involving grave risk." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1363 (2002). Thus, decisions that have greater importance or interest to the parties are "major medical decisions" under the language of the Agreed Modified Final Parenting Plan. The provision regarding joint decision-making provides two examples of major medical decisions—non-emergency surgery and uninsured care—but is not limited to those categories. Danilov argues that the reason for including limited joint-decision making power was financial, so she "could not obligate Mr. Balevski to a procedure that would cost him out of pocket costs he had no say in incurring," and the provision was not intended for "routine medical appointments covered by insurance." But the Agreed Modified Final Parenting Plan does not mention financial reasons. Instead, it states that sole decision-making "is reasonable because of the distance between the parents' homes makes it hard to make timely decisions together." The language is not as limited as Danilov suggests.

Through the history of this litigation before the arbitrator, the trial court, and now this court, the parents have demonstrated that the decision to vaccinate

their child is anything but a routine healthcare decision. The issue of whether P.D. should receive a COVID-19 vaccine originally arose in December 2020, around the time of the first emergency use authorization of a COVID-19 vaccine for adults.[1] P.D. was not yet eligible for a vaccine. At the time of this court's consideration of this case, the parties have been litigating whether P.D. should receive the COVID-19 vaccine for three years. They have submitted medical evidence and impassioned arguments in support of their positions, and each parent's concern for their son's safety is evident.

In light of the record and facts before us, we agree with the arbitrator and the trial court that for this family, under the language of their specific Agreed Modified Parenting Plan, a decision to vaccinate their child, P.D.—particularly for COVID-19 and influenza—is a major medical decision subject to joint decision-making.

II.    Order to Vaccinate

The trial court ordered P.D. receive both the COVID-19 and influenza vaccines. Danilov argues the trial court abused its discretion "by basing its decision on unsupportable findings relative to the best interest of [P.D.]." We review a trial court's decisions relating to a parenting plan for an abuse of discretion. In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). "A trial court abuses its discretion if its decision is manifestly unreasonable or based

---

[1] https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19.

on untenable ground or untenable reasons." Id. A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standards. Id.

In arriving at its decision that P.D. should be vaccinated for COVID-19, the trial court reviewed the medical evidence and found Balevski's expert evidence more persuasive. In particular, the trial found persuasive and relevant Balevski's compilation of data from the CDC and the CDC's conclusion based on that data that the benefits of COVID vaccination outweigh the risks. Balevski also submitted information from Dr. Goldman, who led the COVID-19 research steering committee at Swedish Medical Center and has "significant experience with COVID and other infectious diseases." The court noted Dr. Goldman's testimony that children can suffer serious complications from COVID-19, and there have been over 100 deaths of children between the ages of 5 and 11 years old. According to Dr. Goldman, the COVID-19 vaccines have been subjected to "the most intensive safety monitoring in [U.S.] history." The trial court also pointed to Dr. Goldman's statement that evidence supports the CDC's recommendation to vaccinate children even after a natural COVID-19 infection.

As the trial court noted, Danilov "does not refute this evidence or Dr. Goldman's testimony." Indeed, her medical expert, P.D.'s primary care physician, acknowledged that "[v]accination after infection reduces risk of reinfection" and "it is a reasonable choice to vaccinate against COVID 19 in children." The doctor then stated that despite this, "my personal recommendation in [P.D.'s] case,

13

given his natural immunity and low level of concern for serious complications from reinfection at present is that COVID 19 vaccination is not needed."

The court found Danilov's concerns about the dangers of the vaccine to be speculative and contradicted by the medical evidence. Danilov continues with a similar approach on appeal. She argues that "[e]vidence showed [P.D] has natural immunity, immunity which has lasted more time than any research has discussed. As such, this information is relevant to [P.D.], the child of this action. Any deviation from the best interests of [P.D.] is based on societal ideation surrounding COVID and the associated vaccines."

While Danilov disagrees with its decision, she has not shown that the trial court abused its discretion. The court considered the evidence available and found the CDC and COVID-19 expert more persuasive than P.D.'s physician. The court's conclusion reflects that vaccination is in the best interest of most children and any danger to P.D. is speculative. The resulting decision was not an abuse of the trial court's discretion.

III.   Attorney Fees and Costs

Pursuant to RAP 18.1(a), Danilov requests attorney fees and costs, for both superior court and on appeal. The trial court declined to award fees to either party. Danilov did not assign error to the trial court's denial of fees; therefore, that decision is not before us on review and we will not revisit the issue.

As for fees on appeal, Danilov makes her request under RCW 26.09.140, which allows a court, including a court of appeals, to order a party to pay attorney

fees and costs in dissolution-related proceedings after considering the financial resources of both parties. On appeal, we consider both need and whether the requesting party substantially prevailed. State ex rel. M.M.G. v. Graham, 159 Wn.2d 623, 638, 152 P.3d 1005 (2007), as amended (Feb. 21, 2007). Because Danilov does not prevail in this appeal, we deny her request for fees.

Affirmed.

_Chung, J._

WE CONCUR:

_Feldman, J._          _Cohen, J._