IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of: | No.  48987-2-II |
| TODD HARDIN, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| KAREN LOFGREN, | |
| Appellant. | |

BJORGEN, J. — Karen Lofgren appeals the superior court's entry of a modified parenting plan.  She argues that:  (1) substantial evidence does not support the superior court's finding under former RCW 26.09.191(3) (2012)[1] regarding the impairment of emotional ties, (2) the superior court erred by determining that the case involved a modification of a parenting plan, placing the burden of proof on her, and limiting the scope of proceedings, (3) the superior court erred by denying Lofgren the presumption that contact between her and her children is in the children's best interest, (4) the superior court erred by improperly applying the statutory factors under RCW 26.09.187 during the modification hearing, (5) the superior court erred by denying her a continuance, (6) the superior court erred by appointing guardian ad litem (GAL) Frances

---

[1] Former RCW 26.09.191 authorized the trial court to include certain restrictions in a parenting plan when certain requirements are met.

Kevetter in this case, (7) the superior court impermissibly delegated its authority to modify the parenting plan to Todd Hardin, (8) the superior court erred by imposing attorney fees, costs, and GAL costs on her, (9) we should not award fees and costs on appeal, and (10) the superior court erred by not entering express findings pursuant to former RCW 26.09.191(2)(m)(i).

We hold that the superior court improperly awarded attorney fees, costs, and GAL costs to Hardin and that Hardin is not entitled to attorney fees and costs on appeal. We disagree, however, with Lofgren's remaining challenges, and affirm the superior court's entry of the modified parenting plan.

FACTS

A.     Dissolution and Criminal Conviction

Lofgren and Hardin married in 2002. In 2010 Lofgren filed for divorce, but had the petition dismissed after she and Hardin reconciled. In June 2011 Hardin filed for divorce. On August 26, the superior court appointed Frances Kevetter as GAL for Lofgren and Hardin's children, L.H. and R.H. On January 26, 2012, Lofgren filed a motion to discharge GAL Kevetter, based upon alleged religious bias and for failing to interview witnesses suggested by Lofgren. On February 3, the superior court denied Lofgren's motion to discharge GAL Kevetter. Lofgren never appealed or sought discretionary review of this ruling.

On February 23, Lofgren was arrested for attempting to hire someone to kill Hardin. The facts leading up to Lofgren's arrest and subsequent guilty plea to second degree solicitation of murder are contained in our unpublished opinion, *State v. Lofgren*, No. 44528-0, slip op. at 182 Wn. App. 1057 (2014) (unpublished). As a condition of Lofgren's sentence, the superior court entered two no-contact orders permanently prohibiting contact between Lofgren and her children.

B.    2013 Parenting Plan

On April 24, 2013, the superior court entered an agreed final parenting plan in the

dissolution proceeding between Lofgren and Hardin.[2]  The plan stated,

> This parenting plan is the final parenting plan signed by the court pursuant to a
> decree of dissolution, legal separation, or declaration concerning validity signed by
> the court on this date or dated [April 24, 2013].

Clerk's Papers (CP) at 1.  Lofgren did not appeal the agreed 2013 parenting plan.  The final

parenting plan contained the following:

## II.  Basis for Restrictions

Under certain circumstances, as outlined below, the court may limit or prohibit a
parent's contact with the children and the right to make decisions for the children.

2.1 Parental Conduct (RCW 26.09.191(1),(2))

[Lofgren]'s residential time with the children shall be limited or restrained
completely, and mutual decision-making and designation of a dispute resolution
process other than court action shall not be required, because this parent has
engaged in the conduct which follows:

> A history of acts of domestic violence as defined in RCW 26.50.010(1) or
> an assault or sexual assault which causes grievous bodily harm or the fear
> of such harm.

2.2 Other Factors (RCW 26.09.191(3))

[Lofgren]'s involvement or conduct may have an adverse effect on the children's
best interests because of the existence of the factor[] which follow[s]:

> The abusive use of conflict by the parent which creates the danger of
> serious damage to the children's psychological development.

## III.  Residential Schedule

The residential schedule must set forth where the children shall reside each day of
the year, including provisions for holidays, birthdays of family members, vacations,

---

[2] Although the 2013 parenting plan does not expressly state that it was an agreed parenting plan,
documents from Lofgren's trial attorney state that the plan was an agreed parenting plan.

and other special occasions, and what contact the children shall have with each parent.

. . . .

3.10 Restrictions

[Lofgren]'s residential time with the children shall be limited because there are limiting factors in paragraphs 2.1 and 2.2. The following restrictions shall apply when the children spend(s) time with this parent.

See paragraph 3.13 below.

. . . .

3.13 Other

1. [Lofgren] was convicted of solicitation to commit murder of [Hardin], second degree, on January 25, 2013, under Pierce County cause no. 12-1-00662-0, was sentenced to 165 months in prison, and was ordered to have no contact with [Hardin] and [L.H. and R.H.]. A copy of the Judgment and Sentence and the No Contact Orders regarding the children are attached hereto.

2. ONLY the provisions regarding [Lofgren]'s contact with the children may be reviewed if the provisions of the no contact orders regarding the children entered under cause no. 12-1-00662-0 on 1/25/2013 are terminated.

CP at 1-4.

On August 12, 2014, we issued our unpublished opinion in *Lofgren*, slip op. at 182 Wn. App. 1057 (2014). We vacated Lofgren's lifetime no-contact orders prohibiting contact between her and her children, reasoning that the record did not demonstrate that the scope and duration of the orders were reasonably necessary to protect the children or Hardin. *Lofgren*, slip op. at *4-5. We further explained that "[t]he matter and manner of contact between the children and Lofgren is best resolved by the family court in the dissolution proceeding." *Lofgren*, slip op. at *5. We also commented, "Moreover, our opinion does not preclude a court from issuing a no-contact

4

order grounded on other statutory bases." *Lofgren*, slip op. at \*5 n.1. Our opinion did not analyze the 2013 parenting plan.

C.     Motion to Modify 2013 Parenting Plan

On December 15, 2014, Lofgren filed a motion for a minor modification to the 2013 parenting plan. On January 15, 2015, a superior court commissioner issued an order finding that adequate cause for a modification to the 2013 parenting plan had been shown. On January 23, Hardin filed a motion to revise the January 15 order on adequate cause and to strike the entire order. The superior court determined that Lofgren had shown adequate cause to support a minor modification, but only regarding appropriate contact between Lofgren and her children. Over Lofgren's objection, the superior court reappointed GAL Kevetter for L.H. and R.H., reasoning:

> I think Ms. Kevetter should be reappointed in this case. It doesn't make any sense to have someone else go through this tortured history in both the family law proceeding and the criminal proceeding just to get up to speed as to what occurred. Ms. Kevetter is aware of what the allegations were. She's aware of the kids' emotional condition at the time of the arrest. She can certainly make use of her knowledge and sort of playing out how she wants to go forward with discussing the matter with the children, if even that's appropriate. That may not even be appropriate. It may be appropriate to talk to counselors and other professionals only and not subject the kids to further discussion. But I think that she would be in the best position to at least frame that investigation.

Verbatim Report of Proceedings (VRP) (Feb. 6, 2015) at 15.

On February 6, the superior court filed an order denying Hardin's motion to strike the order on adequate cause, specifying:

> [1] The court finds there is adequate cause ONLY for a minor modification for the sole purpose of determining what, if any, contact there should be between mother and children. All other provisions of the Parenting Plan entered April 24, 2013 shall remain in full force and effect.
>
> . . . .

[2] [Lofgren] shall have the burden of proof as to whether contact is in the children's best interests. Further that [GAL] Franc[e]s Kevetter shall be re-appointed. Ms. Kevetter has familiarity with both the file and the children.

. . . .

[3] The court finds that there may be a grave risk of psychological harm to children from Ms. Lofgren.

. . . .

[4] That GAL Kevetter shall determine first whether it's in the children's best interest for [Kevetter] to have any contact with them to discuss this matter prior to the GAL having contact with children. Further that the GAL shall contact the children's teachers and any other professionals or counselors with whom the children have consulted from mother's arrest.

. . . .

[5] GAL shall investigate and report as to what contact, if any, shall occur between [Lofgren and her children], in light of the findings in 2.1 and 2.2. [of the April 24, 2013 parenting plan] and the GAL's investigation.

[6] Ordered that [Lofgren] shall pay 100% of the GAL's initial retainer. Said funds shall be paid to the Clerk of Pierce County Superior Court.

CP at 89-91.

On February 16, Lofgren filed a motion for reconsideration of this order. On March 17, the superior court denied Lofgren's motion for reconsideration. On April 16, Lofgren filed a notice of discretionary review to our court, seeking review of the superior court's February 6 order. On August 21, a commissioner of this court issued a ruling denying Lofgren's motion for discretionary review.

On October 30, GAL Kevetter submitted her first report, recommending that she interview L.H. and R.H. as part of her investigation. On December 4, GAL Kevetter submitted her second report, which included summaries of interviews with L.H. and R.H, her observations of L.H. and R.H., and recommendations to the superior court.

On January 7, 2016, Lofgren filed a motion under Pierce County Local Rule (PCLR) 40(g)(2)[3] to continue the trial date set for January 11 due to the unavailability of her expert witness, Sonja Ulrich. Lofgren had retained Ulrich to review her case and to provide a report and expert opinion for the modification hearing.[4] As part of her continuance motion, Lofgren submitted a declaration from Ulrich, stating that she would not be available for trial due to "a life threatening medical issue facing a member of [her] immediate family." CP at 188-89. GAL Kevetter was also present for the continuance hearing, and opined, "[T]hese children need a trial. They need this to be done. This is upsetting. It's traumatizing." VRP (Jan. 8, 2016) at 12.

The superior court denied Lofgren's motion for a continuance, finding that "continued conflict damages children," and that Lofgren had not shown extraordinary circumstances meriting a continuance. CP at 195. As part of its oral ruling, the court explained that it "[s]imply is not sufficient to say that there's something serious going on in [Ulrich's] life. I'm not trying to be unkind to the expert, but on the other hand, I'm not going to be unkind to these children either." VRP (Jan. 8, 2016) at 17. The court stated that Ulrich could testify at trial electronically or in person.

Ulrich did not testify at trial. The only information concerning her anticipated testimony is in GAL Kevetter's sealed December 4 report.

---

[3] PCLR 40(g)(2) states in part:
> (B) Continuance of Trial Date. . . . If a motion to change the trial date is made after the Deadline to Adjust Trial Date, the motion will not be granted except under extraordinary circumstances where there is no alternative means of preventing a substantial injustice.

In this case, the deadline for filing a motion to adjust trial date was October 26, 2015.

[4] Although it appears from the record that Ulrich completed a report, the report itself is not in the record.

At trial the superior court clarified that the proposed modification would be analyzed under RCW 26.09.260:

> It does appear to me that this is a case where the only thing before this court is [RCW 26.09.]260, subparagraph 5 issues, not subparagraph 2, but subparagraph 5. . . .  So what we are under is what we call, referencing the statute, is a minor modification.  That's what we're under.  The [RCW 26.09.]187 factors – you know, to some extent, they're always a bit of a guiding light, because they are [in] the best interest of the children at some level.
>
> But you don't get beyond the [RCW 26.09.]260, subparagraph 5 issue, [RCW] 26.09.260 issue in this case.

VRP (Jan. 11, 2016) at 34-35.

At the conclusion of trial, the superior court ruled substantially in favor of Hardin, finding that Lofgren "has not demonstrated a substantial change in circumstances specifically related to the basis for the limitations [on her residential time and contact with L.H. and R.H.]." CP at 268.  The court additionally found that "the relationship between [Lofgren] and the children is not existing with [Lofgren] at this point other than a memory and some contact with relatives."  CP at 269.  Based on this finding, the court found that Lofgren's contact with her children may have an adverse effect on them because of "the absence or substantial impairment of emotional ties between the parent and child" pursuant to former RCW 26.09.191(3)(d).  CP at 269.  In conclusion, the superior court ruled:

> A. Ms. Lofgren's Petition to modify the April 24, 2013 Final Parenting Plan is denied with the exception of the modified language in paragraphs 3.13(1), (2), and (3) of the Final Parenting Plan filed contemporaneously as set forth herein.
>
> B. [Hardin] is awarded a judgment against [Lofgren] in the amount of $5,817.90 with interest thereon at 12% per annum, representing expert witness fees and costs for deposition and trial preparation.
>
> C. [Lofgren] shall pay 100% of the Guardian ad Litem fees and costs incurred herein.  [Hardin] is being reimbursed from the Clerk of the Court in the amount of $200.00 being the sum he previously deposited.

CP at 271.

With regard to costs, the superior court acknowledged that "[Lofgren's] resources are quite severely limited," but determined that Lofgren should pay Hardin for his expenses relating to the nonappearing expert, Ulrich, as well as all of the GAL costs:

[T]he court makes an allocation of attorney fees, as I understand it, based upon the equity of the circumstances. And I do find the equities are that [Lofgren] should be paying for these costs. She's the one that contacted the expert, who turned out from what I read had very little to add to this case. Cost a great deal of money for [Hardin] to go through to take depositions to prepare for trial.

It's not necessarily her fault that [Ulrich is] not here. I don't know. Her letter was very shallow in telling me really why she shouldn't be excused.

But beyond that, in any event, [Hardin] should not have to, and ultimately, the children should not have to bear this expense. Comes out of their pocket. This is something that was brought about by [Lofgren].

I think the equities do favor [Lofgren] paying that expense, as well as the guardian ad litem expenses in this case.

VRP (Jan. 12, 2016) at 258-59.

As a result of the superior court's findings and orders, the 2013 parenting plan was modified so that paragraph 3.13 incorporated the following language:

2 [Lofgren] shall have no contact with [L.H. and R.H.] of any kind or nature or in any manner, via mail, email, social media, instant messaging, or any other electronic means, by telephone, through third parties, or any other means either directly or indirectly until such time as [L.H. or R.H.] express a desire for contact. Upon [L.H. or R.H.] expressing such a desire, [Hardin] will determine the best manner in which to facilitate that contact. [Hardin] will notify [Lofgren] through appropriate channels of the manner and nature of contact. This shall not be construed to bar [Lofgren] from receiving information from [L.H. or R.H.] or third parties.

3 If [L.H. or R.H.] need or want to see a therapist, or if [Hardin] determines that they should see a therapist before having any contact with [Lofgren], [Hardin] shall facilitate therapy for [L.H. and R.H.].

CP at 277-78.

Lofgren appealed the entry of the 2016 modified parenting plan, alleging several errors arising out of the modification proceeding.

9

ANALYSIS

Our review is limited to the issues relating to the 2016 modification hearing and modified 2016 parenting plan. Because the 2013 agreed parenting plan was never appealed, it is not before us on review.[5]

In the present appeal Lofgren argues that: (1) substantial evidence does not support the superior court's finding under former RCW 26.09.191(3), (2) the superior court erred by determining that the case involved a modification of a parenting plan, placing the burden of proof on her, and limiting the scope of proceedings, (3) the superior court erred by denying Lofgren the presumption that contact between her and her children is in the children's best interest, (4) the superior court erred by improperly applying the statutory factors under RCW 26.09.187 during the modification hearing, (5) the superior court erred by denying her a continuance, (6) the superior court erred by appointing GAL Kevetter in this case, (7) the superior court impermissibly delegated its authority to modify the parenting plan to Hardin, (8) the superior court erred by imposing attorney fees, costs, and GAL costs on her, (9) we should not award fees and costs on appeal, and (10) the superior court erred by not entering express findings pursuant to former RCW 26.09.191(2)(m)(i).

---

[5] Lofgren suggests in her brief that the superior court violated her due process right to a fair trial by accepting the parties' agreed 2013 parenting plan absent a contested hearing. We decline to address this argument for two reasons. First, Lofgren has not assigned error to or provided legal analysis of this issue, therefore the issue is waived. RAP 10.3(a)(4); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Second, the 2013 parenting plan is outside the scope of our review for this case, since Lofgren never appealed it.

## I. STANDARDS OF REVIEW AND LEGAL PRINCIPLES

We review the interpretation of a parenting plan as a question of law. *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997). We review questions of law de novo. *Sloan v. Horizon Credit Union*, 167 Wn. App. 514, 518, 274 P.3d 386 (2012). If a parenting plan is ambiguous, we resolve the ambiguity by applying "general rules of construction applicable to statutes, contracts and other writings." *Gimlett v. Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). In determining the parenting plan's intended effect, our "inquiry is normally limited to the decree's provisions." *Kirshenbaum*, 84 Wn. App. at 803. Additionally, our Supreme Court has noted that "a parenting plan's overriding purpose is to do what is in the best interest of the child." *In re Parentage of C.M.F.*, 179 Wn.2d 411, 419, 314 P.3d 1109 (2013).

Apart from interpretation, we review a family court's rulings regarding the provisions of a parenting plan for an abuse of discretion. *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Halls*, 126 Wn. App. at 606. A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standard. *In re Halls*, 126 Wn. App. at 606. A decision is based on untenable grounds or is made for untenable reasons if the court applied the wrong legal standard or relied on unsupported facts. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

After the superior court enters a final parenting plan and that plan is not appealed by either party, "the plan can be modified only under RCW 26.09.260." *In re Marriage of Coy*, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011). RCW 26.09.260(1) requires that:

> Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or parenting plan unless

it finds . . . that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

## II. CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Scope of Challenge

Lofgren assigns error to the superior court's findings and conclusions regarding the modified parenting plan "in its entirety, as well as to the parenting plan." Br. of Appellant at 4. Lofgren does not contend that any of the superior court's findings lack substantial supporting evidence in the record, but rather assigns error to the entire plan because "[t]he [superior] court's order, drafted by [Hardin]'s counsel, is a near verbatim version of the court's oral ruling, in place of findings of fact and conclusions of law." Br. of Appellant at 3-4.

Generally, in order to preserve a challenge for appeal, a party must comply with RAP 10.3(g):

A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

It is not the appellate court's "obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Consistently with these principles, we address challenges to findings of fact that may be fairly implied by Lofgren's arguments on appeal.

We review challenges to a superior court's factual findings for substantial evidence. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Substantial evidence exists

if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). We interpret the evidence and all reasonable inferences from the evidence in favor of Hardin. *In re Marriage of Zigler and Sidwell*, 154 Wn. App. 803, 812, 226 P.3d 202 (2010).[6]

B.      Former RCW 26.09.191(3)(d)—Impairment of Emotional Ties

Lofgren challenges the superior court's finding that there is an absence or substantial impairment of emotional ties between her and her children. Substantial evidence supports this finding.

As part of her second report, GAL Kevetter included summaries of interviews she had with L.H. and R.H, as well as her observations of the children.

Based on our review of the sealed materials, we hold that the finding of impairment of emotional ties is supported by substantial evidence.

### III. 2016 MODIFICATION PROCEEDING

A.      Effect of Vacated No-Contact Order

Next, Lofgren appears to argue that when we vacated the criminal no-contact orders in our earlier unpublished opinion, we effectively vacated the 2013 parenting plan with respect to contact with L.H. and R.H. We disagree.

Paragraph 3.10 of the 2013 parenting plan states:

[Lofgren]'s residential time with the children shall be limited because there are limiting factors in paragraphs 2.1 and 2.2. The following restrictions shall apply when the children spend(s) time with this parent.

---

[6] To the extent that Lofgren's briefing argues that substantial evidence does not support the finding that Lofgren has engaged in an abusive use of conflict, which creates a danger of serious damage to the children's psychological development, we decline to address this challenge. This finding was made as part of the agreed 2013 parenting plan, which was never appealed and is beyond our scope of review.

See Paragraph 3.13 below.

CP at 3.

Paragraph 3.13 of the 2013 parenting plan reads:

1. [Lofgren] was convicted of solicitation to commit murder of [Hardin], second degree, on January 25, 2013, under Pierce County cause no. 12-1-00662-0, was sentenced to 165 months in prison, and was ordered to have no contact with [Hardin] and [L.H. and R.H.]. A copy of the Judgment and Sentence and the No Contact Orders regarding the children are attached hereto.

2. ONLY the provisions regarding [Lofgren]'s contact with the children may be reviewed if the provisions of the no contact orders regarding the children entered under cause no. 12-1-00662-0 on 1/25/2013 are terminated.

CP at 4.

Lofgren appears to contend that when we vacated the no-contact orders in the related criminal matter, the 2013 parenting plan was deprived of any legal authority to entirely restrict her contact with her children. She argues that in the absence of any other authority to justify restricting all contact with her children, the vacation of the criminal no-contact orders effectively vacated the contact provisions of the 2013 parenting plan and that the court should have held a contested hearing to develop an entirely new residential contact provision.

However, vacation of the criminal no-contact orders did not somehow vacate the prohibition of contact with the children in the parenting plan. As explained further below, paragraphs 3.10 and 3.13, when read together, show that the 2013 parenting plan relied on two sources of authority to restrict Lofgren's contact with her children and that the plan anticipated a limited review of only the contact provisions in the event that the no-contact orders were terminated.

Paragraph 3.10 references both the criminal no-contact orders mentioned in paragraph 3.13 and the findings in paragraphs 2.1 and 2.2. Paragraph 2.2 contains a finding that Lofgren

14

has engaged in the abusive use of conflict under former RCW 26.09.191(3). Under former RCW 26.09.191(3)(e):

> A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit *any provisions* of the parenting plan, if any of the following factors exist:
> . . . .
> (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development.

(Emphasis added.) Because paragraph 3.10 referenced both the finding in paragraph 2.2 and the criminal no-contact orders mentioned in paragraph 3.13, we interpret the 2013 parenting plan as relying on both paragraphs to justify restricting Lofgren's contact with her children. Paragraph 2.2 by itself supported the prohibition of any contact with L.H. and R.H. in the 2013 parenting plan, without reference to the criminal proceeding.

In addition, the references in the 2013 plan to the criminal proceeding do not mean that our decision in that proceeding vacated the restrictions on Lofgren's contact with the children. Paragraph 3.13.2 states that "ONLY the provisions regarding [Lofgren]'s contact with the children may be reviewed" if the no-contact orders are terminated. CP at 4. Generally, we will interpret the use of the term "shall" in statutes or contracts as mandatory, while the term "may" implies that the provision is permissive or discretionary. *Agnew v. Lacey Co-Ply*, 33 Wn. App. 283, 289, 654 P.2d 712 (1982). The definition of "residential schedule" contained in the 2013 parenting plan requires the schedule to "set forth . . . what contact the children shall have with each parent." CP at 2. Therefore, because the plan must establish what contact each parent will have with the children, the use of "may" in paragraph 3.13.2 suggests that the plan anticipated a potential continuing lack of contact between Lofgren and her children in absence of the no-contact orders.

15

For these reasons, vacation of the criminal no-contact orders did not vacate any part of the parenting plan. Instead, if the no-contact orders were terminated, paragraph 3.13.2 gave Lofgren the ability to seek modification of the parenting plan's contact provisions, which continued to prohibit Lofgren's contact with her children in the absence of further action.

B.      Burden of Proof

Lofgren argues that the superior court erred by placing the burden on her to show that her requested modification would be in the best interest of her children. We disagree.

Lofgren asserts that the superior court improperly placed the burden on her to show that modification was in her children's best interest because once a party demonstrates adequate cause it is entitled to "a hearing date on an order for the other party to show cause why the requested modification should not be granted," which is set out in RCW 26.09.260. Br. of Appellant at 27. We have previously held that in an action to modify a parenting plan under RCW 26.09.260, "the moving party must prove that a modification is appropriate." *In re Halls*, 126 Wn. App. at 607. Therefore, this argument fails.

C.      Scope of Inquiry

Lofgren claims that the superior court "had no authority to limit the proceeding" to whether to modify the 2013 parenting plan to permit Lofgren to have contact with L.H. and R.H. We disagree.

Lofgren provides no explanation or citations to legal authority to support her claim that the superior court lacked authority to limit the proceedings in this case or that it was precluded from considering the agreed findings in the former parenting plan during a proceeding to modify that parenting plan. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found

16

none.'" *Dep't of Ecology v. Wahkiakum County*, 184 Wn. App. 372, 376 n.3, 337 P.3d 364 (2014) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). In this case, paragraph 3.13 of the 2013 parenting plan anticipated the possibility of future review as to only the particular provisions relating to contact with her children if the criminal no-contact orders were terminated. Therefore, this argument fails.

### D.     Preemptive Finding

Lofgren argues that the superior court erred by finding "there may be a grave risk of psychological harm to [L.H. and R.H.] from Ms. Lofgren." CP at 90. She contends that the superior court did not have authority to make a "preemptive finding" regarding the possibility that she may cause psychological harm to L.H. and R.H. Br. of Appellant at 29. Lofgren does not cite to any legal authority to support this claim. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield*, 178 Wn. App. at 876. Therefore, we decline to consider this argument.

### E.     Appearance of Unfairness

Lofgren maintains that the superior court's finding that she may cause psychological harm to her children raises an appearance of unfairness by the superior court. However, the 2013 agreed parenting plan contained a finding that Lofgren's abusive use of conflict "creates the danger of serious damage to the children's psychological development." CP at 2. Because this finding accurately reflects the findings in the 2013 agreed parenting plan, and the 2013 findings are not subject to review in this appeal, this argument fails.

### F.     Preclusive Effect

Lofgren further asserts that the superior court "should not have given preclusive effect to the [RCW 26.09.]191 findings from the 2013 parenting plan." Br. of Appellant at 29. Lofgren

offers no argument or legal citation as to how this action amounts to an abuse of discretion by the superior court. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield*, 178 Wn. App. at 876. Therefore, we decline to consider this argument.

## IV. STATUTORY PRESUMPTION

Lofgren argues that the superior court erred in its parenting plan modification decision by failing to apply the statutory presumption that contact between a parent and a child is in the best interests of the child.[7] We disagree.

RCW 26.09.002 states, in part:

> Parents have the responsibility to make decisions and perform other parental functions necessary for the care and growth of their minor children. In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests.

The 2013 parenting plan contained a finding that Lofgren had engaged in "abusive use of conflict . . . which creates the danger of serious damage to the children's psychological development." CP at 2. Although this finding contemplates future harm, a court "'need not wait for actual harm to accrue before imposing restrictions.'" *In re Marriage of Chandola*, 180 Wn.2d 632, 645, 327 P.3d 644 (2014) (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 283 P.3d 546 (2012)). Therefore, because the 2013 parenting plan contained a finding that

---

[7] In her briefing on this issue, Lofgren references constitutional principles, but does not provide any analysis relating to the asserted constitutional interests beyond her argument regarding RCW 26.09.002. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield*, 178 Wn. App. at 876. Therefore, we only address Lofgren's argument under RCW 26.09.002.

"[Lofgren's] involvement or conduct may have an adverse effect on the children's best interest," we hold that the superior court did not err. The record shows that any presumption has been rebutted.

## V. RCW 26.09.187

Next, Lofgren argues that the superior court erred by applying the RCW 26.09.187 factors to the circumstances of this case. Although the superior court referenced the statutory factors under RCW 26.09.187 at the modification hearing, the court clarified that the case would be resolved under RCW 26.09.260. Furthermore, Lofgren does not explain how a potential application of the RCW 26.09.187 factors amounts to an error under RCW 26.09.260. Therefore, this argument fails.

## VI. DENIAL OF A CONTINUANCE

Next, Lofgren argues that the superior court erred by denying her a continuance after her expert witness became unavailable. We disagree.

We review a decision to deny a continuance for a manifest abuse of discretion. *In re Welfare of R.H.*, 176 Wn. App. 419, 424, 309 P.3d 620 (2013). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Halls*, 126 Wn. App. at 606. A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standard. *In re Halls*, 126 Wn. App. at 606. A decision is based on untenable grounds or is made for untenable reasons if the court applied the wrong legal standard or relied on unsupported facts. *Rohrich*, 149 Wn.2d at 654. In considering whether to grant a continuance, the superior court takes into account a number of factors such as diligence, due process, the need for an orderly procedure, the possible

effect on the trial, and whether prior continuances were granted. *In re R.H.*, 176 Wn. App. at 424-25.

Because Lofgren's motion for a continuance was brought after the deadline to adjust the trial date, the superior court was required to deny the motion unless "extraordinary circumstances" existed and the continuance was necessary to prevent a substantial injustice. PCLR 40(g)(2). The superior court heard testimony from GAL Kevetter that the ongoing litigation between Lofgren and Hardin regarding the parenting plan was upsetting and traumatizing to L.H. and R.H. Although Lofgren maintains that her expert would have provided relevant evidence and opinion, the expert's report is not part of the record on appeal. As noted, the only information concerning the expert's anticipated testimony is in GAL Kevetter's sealed December 4 report, which did not include specific information regarding the contents of Ulrich's report.

Therefore, Lofgren's assertion that her expert's testimony would be critical at trial calls for us to speculate as to what the expert would have testified to had she been present for trial. Because Lofgren has not demonstrated that her expert's report or opinion would have been relevant, and the record supports the superior court's observation that lengthy litigation was not in the children's best interest, we hold that the superior court did not abuse its discretion by denying a continuance.

Lofgren also claims that the superior court's denial of her continuance effectively amounted to an impermissible discovery sanction under *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 497-98, 933 P.2d 1036 (1997). We disagree.

In *Burnet*, our Supreme Court held that "it was an abuse of discretion for the trial court to impose the severe sanction of limiting discovery . . . without first having at least considered, on

the record, a less severe sanction that could have advanced the purposes of discovery and yet compensated [the defendants] for the effects of the . . . discovery failings." 131 Wn.2d at 497. However, *Burnet* is distinguishable from the present case because the superior court in this case did not exclude Lofgren's expert, instead allowing her to observe the proceedings and testify through electronic means. Therefore, this argument fails.

Lofgren additionally asserts that to the extent that PCLR 40(g)(2) requires a greater showing than under CR 40(d), the local rule must yield to the state rule. However, it is CR 40(e) that sets the standards for granting a continuance.[8] Lofgren does not discuss CR 40(e) in her briefing and does not explain how PCLR 40(g)(2) necessarily conflicts with CR 40(e). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield*, 178 Wn. App. at 876. Therefore, we decline to consider this issue.

## VII. Issues Pertaining to GAL Kevetter

### A. RCW 26.12.177(2)

Lofgren argues that the superior court did not comply with RCW 26.12.177(2) when it appointed GAL Kevetter in this case. We disagree.

RCW 26.12.177(2) requires a court to select a GAL "from the registry except in exceptional circumstances as determined and documented by the court." Lofgren asserts that the superior court "did not choose a [GAL] from the court registry," without any further explanation or citation to the record or authority. Br. of Appellant at 40-41. Because Lofgren does not

___

[8] CR 40(e) states, in part, "A motion to continue a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and address of the witness or witnesses."

provide any argument that GAL Kevetter was not on the GAL registry, we hold that the superior court did not violate RCW 26.12.177(2) by appointing a GAL that was not on the registry.

Lofgren also maintains that GAL Kevetter was improperly appointed in this case because she was not appointed pursuant to the GAL rotating registry. RCW 26.12.177(2)(a) requires "[e]ach guardian ad litem program . . . [to] establish a rotational registry system for the appointment of guardians ad litem." RCW 26.12.177(2)(a) further states that "[g]uardians ad litem under this title shall be selected from the [rotational] registry except in exceptional circumstances as determined and documented by the court." By its plain terms, the statute requires a court to use the established rotational registry to select a GAL, unless the court finds that exceptional circumstances justify appointing a particular GAL.

There do not appear to be any cases discussing the standard of review we use in determining whether exceptional circumstances justify the appointment of a particular GAL. Our Supreme Court has explained that:

> An abuse of discretion standard often is appropriate when (1) the trial court is generally in a better position than the appellate court to make a given determination; (2) a determination is fact intensive and involves numerous factors to be weighed on a case-by-case basis; (3) the trial court has more experience making a given type of determination and a greater understanding of the issues involved; (4) the determination is one for which "no rule of general applicability could be effectively constructed"; and/or (5) there is a strong interest in finality and avoiding appeals.

*State v. Sisouvanh*, 175 Wn.2d 607, 621-22, 290 P.3d 942 (2012) (internal citations omitted) (quoting *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003)). The weight of these guidelines counsels that abuse of discretion is the appropriate standard for our review of a superior court's determination that exceptional circumstances justify appointment of a particular GAL.

22

The superior court appointed GAL Kevetter because of her prior involvement with L.H. and R.H. and her familiarity with the family's history. Although the superior court did not enter any formal findings regarding exceptional circumstances, its oral ruling is sufficiently detailed to permit appellate review. *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 415-16, 157 P.3d 431 (2007). The superior court explained that it preferred to appoint GAL Kevetter because her prior exposure to the case would permit her to take a more flexible approach to her investigation and potentially shield L.H. and R.H. from additional participation in this dispute. We cannot say that the superior court's decision is so unreasonable as to be outside the range of acceptable choices or that it was otherwise untenable. We hold that the superior court did not abuse its discretion by determining that the circumstances merited the appointment of GAL Kevetter.

B.     GAL Bias and GAL Rule (GALR) 2

Lofgren also argues that GAL Kevetter was biased and violated GALR 2. Although Lofgren raised the issue of GAL Kevetter's potential bias in the prior dissolution proceeding involving the 2013 parenting plan, Lofgren did not raise the issue of GAL bias during the modification proceeding. Lofgren also raises her claim that GAL Kevetter violated GALR 2 for the first time on appeal. Generally, we will not consider issues raised for the first time on appeal. *In re Marriage of Knutson*, 114 Wn. App. 866, 870-71, 60 P.3d 681 (2003). Furthermore, Lofgren has not shown why review of these issues for the first time on appeal would be proper under RAP 2.5(a).[9] Therefore, we decline to address these issues for the first time on appeal.

---

[9] RAP 2.5(a) states, in part, "The appellate court may refuse to review any claim of error which was not raised in the trial court."

VIII. DELEGATION OF AUTHORITY

Next, Lofgren argues that the superior court improperly delegated its authority to modify the parenting plan to Hardin regarding whether any contact would occur between Lofgren and her children. We disagree.

We have previously held that a superior court cannot delegate its authority to modify a parenting plan because RCW 26.09.260 requires an independent judicial inquiry prior to any modification. *In re Parentage of Schroeder*, 106 Wn. App. 343, 352, 22 P.3d 1280 (2001). However, a court may delegate the interpretation of a parenting plan so long as the court retains ultimate authority to review and enforce the plan. *In re Parentage of Smith-Bartlett*, 95 Wn. App. 633, 640, 976 P.2d 173 (1999). If a parent fails to observe obligations under a parenting plan, the other parent may bring a contempt motion to enforce the terms of the parenting plan. RCW 26.09.160.

In this case, the provision challenged by Lofgren states, in part, "Upon the children expressing such a desire [to have contact with Lofgren], [Hardin] will determine the best manner in which to facilitate that contact." CP at 278. This provision does not appear to delegate any authority to Hardin to modify the parenting plan, as it requires him to facilitate contact between Lofgren and her children in the event that they desire contact. Rather, the provision merely provides him with discretion on how best to initiate and maintain contact between Lofgren and her children. If Hardin were to refuse to facilitate contact between Lofgren and her children after the children express a desire for contact with Lofgren, Lofgren could file a contempt motion to compel Hardin's performance under the parenting plan. This argument fails.

IX. SUPERIOR COURT FEES AND COSTS

A.     Attorney Fees and Costs

Lofgren contends that the superior court erred by requiring her to pay Hardin's legal fees and costs associated with preparing a response to her anticipated expert, Ulrich. We agree.

We review the superior court's attorney fee award for an abuse of discretion. *Walsh v. Reynolds*, 183 Wn. App. 830, 856, 335 P.3d 984 (2014). Although the superior court did not expressly state the authority upon which it relied to award attorney fees and costs to Hardin, RCW 26.09.140[10] authorizes an award of attorney fees and costs in a dissolution proceeding. However, we have previously noted that "[a]ttorney fees in a dissolution proceeding are based on need and ability to pay." *Walsh*, 183 Wn. App. at 856. Our Supreme Court has also held that "RCW 26.09.140 allows a court to award attorney's fees if a party demonstrates financial need." *Konzen v. Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

The superior court's oral ruling on costs demonstrates that it awarded attorney fees based upon the perceived equities of the case, rather than on the basis of need and ability to pay. A court abuses its discretion if it applies an incorrect legal standard. *Rohrich*, 149 Wn.2d at 654. Therefore, we hold that the superior court abused its discretion by imposing attorney fees on Lofgren without determining the parties' relative need and ability to pay. We reverse and

---

[10] RCW 26.09.140 states,

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

remand the award of attorney fees and costs so the superior court may perform the proper analysis.

B.      GAL Costs

Lofgren asserts that the superior court erred by requiring her to pay all of the GAL costs. We agree.

Under RCW 26.12.175(1)(d), the superior court "may order either or both parents to pay for the costs of the guardian ad litem, *according to their ability to pay*." (Emphasis added.) In this case, the superior court's oral ruling on costs demonstrates that it required Lofgren to pay the GAL costs based upon the perceived equities of the case, rather than on the basis of ability to pay. A court abuses its discretion if it applies an incorrect legal standard. *Rohrich*, 149 Wn.2d at 654. Therefore, we hold that the superior court abused its discretion by imposing GAL costs on Lofgren without determining the parties' ability to pay. We reverse and remand the award of GAL costs to enable the superior court to perform the proper analysis.

## X.  APPELLATE ATTORNEY FEES AND COSTS

Hardin requests attorney fees and costs on appeal under RCW 26.09.140. In order for a party to seek fees under RCW 26.09.140, it must first demonstrate financial need. *Konzen*, 103 Wn.2d at 478. Hardin does not claim that his request is based on financial need and there is insufficient information in the record to adequately determine the relative financial status of the parties. Therefore, we decline to award attorney fees and costs under this statute.

Hardin also requests attorney fees on appeal for having to defend a frivolous appeal. Under RAP 18.9(a) we may award sanctions, including an award of attorney fees and costs, to an opposing party if a party files a frivolous appeal. *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 557, 312 P.3d 702 (2013). An appeal is frivolous if there are no

debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal. *Granville*, 177 Wn. App. at 557-58. We consider the record as a whole in determining whether an appeal is frivolous. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 110, 74 P.3d 692 (2003). The fact that an appeal is ultimately unsuccessful is not dispositive of whether it is frivolous. *Tomsovic*, 118 Wn. App. at 110. We resolve doubts as to whether an appeal is frivolous in favor of declining to impose sanctions. *Granville*, 177 Wn. App. at 558.

Lofgren prevails in this appeal on her issues relating to attorney fees, costs, and GAL costs. Therefore, her appeal is not frivolous and we decline to award attorney fees and costs on this basis.

## XI. ISSUES RAISED IN REPLY

For the first time in her reply brief, Lofgren argues that the superior court was required to make express findings under former RCW 26.09.191(2)(m)(i) in order to fully restrict her contact with L.H. and R.H. Our Supreme Court has held that an issue that is raised and argued for the first time in a reply brief is too late to warrant consideration. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. Therefore, we decline to reach this issue.

## CONCLUSION

We affirm the superior court's modification of the parenting plan, reverse the award of attorney fees, costs, and GAL costs, deny attorney fees on appeal, and remand to the superior

court to recalculate attorney fees, costs, and GAL costs consistently with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Worswick, P.J.

Melnick, J.